FREDERICK A. PETERSEN v. EDMUND G. RAWSON.

Where the judgment of the referee is reversed by the General Term, and it is stated in the judgment of reversal that such reversal was made upon questions of fact, it is the duty of this court to examine the .facts of the case, as well as the law, and to decide whether the judgment should have been reversed by the General Term upon the facts. The whole case, upon the facts, is presented to this court for review.

Where the plaintiff entered into a contract with the defendant "to make the plans, elevations, sections and specifications" of a dwelling house intended to be erected by him, and to "superintend the progress" of the building, and where the mason also had a separate contract with the defendant "well and sufficiently to erect and finish the building, agreeably to drawings and specifications" made by the plaintiff, and where the mason agreed also "to lay out his work himself," and there was a defect in the building, in that the balcony in front and the front parlor windows were two and three quarters inches higher from the parlor floor than was shown upon the plans, and the same distance higher from the floor than the back parlor windows, and where it was proved that the plaintiff had diligently superintended the progress of the work — *Held,* that such defects are not chargeable upon the plaintiff, and formed no ground for withholding payment of the amount agreed to be paid for his services as such architect.

*Held, further,* that the judgment of the General Term, overruling the decision of the referee in favor of the claim of the architect, was erroneous, and should be reversed.

The circumstance that the defendant paid his masons the balance due to them for their work, when he could have withheld the same, until they presented a certificate from the plaintiff, which he refused to give, held unimportant. The defendant might select his remedy against either party, as by law entitled; and the neglect of the one, or payment to him, would constitute no defense to the party prosecuted. The statement of the facts, on this branch of the case, held not to interfere with the judgment of the referee, as his judgment is not based upon such a theory.

HUNT, J. On the 4th day of May, 1853, the plaintiff and defendant entered into a contract, by which the plaintiff was employed to draw plans, sections, elevations, &c., and to superintend the progress of a new dwelling house which the defendant intended to build in the city of New York, and for which drawings and superintendence the defendant agreed to pay the plaintiff the sum of five hundred dollars, at the stages of the work in the agreement specified. The referee, before whom the case was tried, found in favor of

the plaintiff for the amount of his claim, and in substance, that he had faithfully performed the service agreed to be performed on his part. Judgment was entered upon his report. On an appeal to the General Term of the Superior Court of the city of New York, this judgment, it is recited in the order of reversal, was reversed upon questions of fact. The plaintiff appeals to this court from this judgment of the General Term.

Each party claims to be entitled to a judgment upon the facts as exhibited on the trial before the referee. The referee agreed with the plaintiff in his view of the case; while the General Term concurred in the defendant's view.

The first question that arises here, is as to the extent to which this court may examine the facts, and by what principles it is to be governed in deciding upon them. The rule is furnished by section 272 of the Code as amended by chapter 459 of the Laws of 1860. " If the judgment be reversed at the General Term, and a new trial ordered, it shall not be deemed to have been reversed on questions of fact unless so stated in the judgment of reversal; and in that case the question whether the judgment should have been reversed, either upon questions of fact or of law, shall be open to review in the Court of Appeals." The whole case upon the facts is thus presented to this court for review, and this court is to determine " whether the judgment should have been reversed " upon the questions of fact. The respondent seeks to limit this power of review by a reference to the opinion of Judge COMSTOCK in *Hoyt* v. *Thompson's Executor* (19 N. Y., 207, 212). The remarks of the learned judge in that case are not applicable here. That case was decided and the opinion pronounced in June, 1859, while the section we are now construing was not passed until 1860. The previous statute gave no such power as was given by the amended Code of 1860. It seems clear that upon the present law, the case is open to an examination of the facts here, and that we are called upon to decide whether the judgment of the Superior Court, reversing the judgment below upon the facts, was correct.

The referee found that the plaintiff bestowed as much time as was necessary in superintending the building, and that the variations from the plan were not caused by carelessness, negligence or inattention on his part. If these facts existed, the plaintiff was entitled to recover. It is not certain that the General Term held that these facts did not exist. They say: "It appears to us, upon the testimony now presented in the case, that whatever may have been the deserved and general reputation of the plaintiff, and however strong the evidence of his giving such supervision as is ordinarily bestowed by architects, there was a failure in one particular, which is sufficient to defeat his action for the balance of his compensation." I assume, however, that they mean to say, that he did not give that supervision to the building which his duty required, and will examine the case on that theory.

The principal defects alleged to exist in the building are, that the balcony in front, and the front parlor windows, were about two and three-quarter inches higher from the parlor floor than was shown on the plans, and the same distance higher from the floor than the back parlor windows. That this variation did exist in fact was proved on the trial and is not now disputed.

How was it caused? The referee says that it arose from the masons not having accurately conformed to the specification and plan, and this appears to be the proof.

Was the plaintiff responsible for this fault of the masons? The plaintiff agreed to make "the plans, sections, elevations, specifications, and to superintend the progress" of the building to be erected. It was not his duty to do the work. The agreement between the defendant and his masons provides that the masons "shall well and sufficiently erect and finish" the building in question, "agreeably to drawings and specifications made by Frederick Petersen." It was not the duty of the plaintiff to "lay out" the work, as it is technically termed. This, it was expressly provided, should be done by the mason, who agrees "to lay out his work himself."

The plaintiff was bound to furnish the plans, specifications,

sections and elevations, and the mason was bound to lay out the work. In other but perhaps not plainer words, the plaintiff was bound to put down, and to show on paper, how every part was to be built, and the mason was to stake it out, measure his lumber, and make actual measurements on the ground and in the erection for such building. I do not think it was the duty of the plaintiff to measure the joists or timbers of which the different stories were to be constructed, and to determine by actual measurement that the ceiling of the first story had an elevation of thirteen feet, and the second had an elevation of eleven feet, or to measure the thickness and depths of the brick or stone walls. He furnished instructions and information in writing on those points, and it was the duty of the mason or carpenter to furnish the materials, to see that they were of the proper dimensions, and to put them in their proper places.

The defendant, however, contends that the obligation of the plaintiff to " superintend the progress " of the building, bound him to discover and to correct the error committed by the mechanics. The plaintiff did assume the superintendence of the erection of the building, as I think he was bound to do, upon a fair construction of his language, and must meet the obligations of his contract.

The papers before us do not show the size of the windows in the front parlor. The first story windows in the front parlor were to be sixteen inches from the floor, and the windows themselves were probably ten or eleven feet in height. The plaintiff came from day to day to superintend the progress of the work, and while thus superintending, was he bound to have ascertained that the window sills in the front parlor were two and three-quarter inches higher from the floor, than was authorized by the plan? To an inexperienced eye the difference would not have been perceptible; but should the knowledge and skill of a good architect at once have detected it? The testimony is not satisfactory to establish the affirmative of this proposition. Wm. Thomas, an architect, says, " that he does not consider that the building has been properly superintended. If it had been, the mistake would have

been found out when the first story beams were on. Comparing the second story beams, I should have found it out." Mr. Windham, an architect, thinks the difference in height between the parlor windows in front and in rear, ought to have been discovered as soon as they began to lay the brown stone in front. Mr. Ritch, on the other hand, also an architect, says, " that it is impossible to say when the error should have been discovered. It might have passed the observation of the architect, till the building was completed. It is an error likely to pass any one's observation. It would most likely pass his notice until the cornices were put up." These were the only architects who testified on this point. It was proved by various witnesses that the plaintiff was diligent in his attendance upon the building. The respectable and intelligent referee who had the witnesses personally before him, and was able to form a better opinion of their intelligence and integrity than one who did not see them, must have held that the plaintiff was not bound to have discovered this defect. Mr. Traphagen testified that he told the plaintiff the balcony was too high, and that he said it was all right. He was one of the contractors for the mason work, and it was apparently a question whether the fault was on his part or that of the plaintiff. The referee did not rely on his evidence. He found that the plaintiff had bestowed as much personal attention upon the building as was necessary, and that the variations mentioned were not caused by carelessness, negligence or inattention on his part. I do not find it necessary to differ with him.

The circumstance that the defendant paid the masons the balance due them for the work, when the plaintiff refused them a certificate, on account of the defects in question, and which payment he was not bound to make, until the masons presented such certificate, is not important. If the masons neglected their duty, the defendant could certainly have made them respond in damages, and could have withheld the last payment to apply upon such damages. The fact, however, that they neglected their duty, furnishes no evidence that the plaintiff had discharged his. Each may

· have been in fault, and each liable in damages, and a failure to prosecute one, or to secure an easy remedy against him, does not discharge the default of the other, nor do I understand that the referee based his decision upon such a theory. All the facts on that branch of the case are set forth by the referee, that such effect may be given to them as they are entitled to. This is often required by counsel, and acceded to by referees, when the facts are not essential. The referee, however, places his decision upon the ground that the plaintiff had fully performed his duty, and was entitled to his compensation.

The judgment of the General Term should be reversed, and final judgment for the plaintiff entered.

LEONARD, J., (dissenting.) The General Term of the New York Superior Court reversed a judgment in that court in favor of the plaintiff, principally on the ground that the evidence did not support the facts found by the referee on the question of negligence in the performance of his contract with the defendant. The plaintiff now appeals, stipulating that if the order granting a new trial be affirmed, an absolute judgment shall be rendered against him. It becomes necessary, on this appeal, to examine the evidence as well as the facts and conclusions found by the referee. The plaintiff was employed by the defendant to draw the plans and superintend for him, the construction of a dwelling house, in the city of New York. The compensation was agreed on, and amounted to $500, of which the sum of $350 has been paid, and this action was brought to recover the balance remaining unpaid, amounting to $150. The plaintiff drew the plans and specifications, and the defendant contracted with the mechanics to perform the work, under the supervision of the plaintiff, and to be paid for only on his certificate of approval. It was the duty of the masons to lay out and execute their work according to the plans and specifications drawn by the plaintiff, and it was his duty to see to it that the masons performed their work properly, and in accordance therewith.

The building was not constructed strictly in conformity with the plans and specifications, on the part of the masons, although they were furnished with copies. The error consisted in constructing the front windows between three and four inches higher than the plans required, so that they were not on the same level with the rear windows, and also carried the top of the window mouldings so high that they interrupted and run into the cornice, and marred the appearance of the rooms. The door steps were so constructed that the first step was about three or four inches too low, being only a rise of four inches from the sidewalk, when it should have been seven and a half inches. The balcony was also on the same elevation.

The plaintiff gave no notice to the defendant of these mistakes until the mason work was about completed, and continued to certify payments until the last installment became due, amounting to $1,900. The plaintiff refused to certify the correctness of the work on account of these errors, but the house was accepted by the defendant, and the last installment was paid to the masons in full. The evidence of one of the masons is, that the attention of the plaintiff was called to the fact that the balcony was too high; and the correct elevation of the balcony was directly related to that of the windows. This was at a period of the work when the error might have been corrected without great additional expense. There is no evidence on the part of the plaintiff contradicting or impairing the force of this testimony given by the mason.

The fact chiefly relied on by the plaintiff to show diligence in the performance of his duty is, that he notified the defendant of the errors before the last payment was made, and refused to furnish the required certificate to enable the masons to obtain that payment. The plaintiff relies upon the ground that the defendant might have indemnified himself for the error of the mason by refusing to make the last payment; they being unable to show that they had become entitled to the certificate, and, consequently, were not entitled to that payment.

It is also insisted that the error occurred by the fault of the masons in laying out the work improperly at the beginning; that it was no part of the plaintiff's duty to lay out the work, and that he is not to be held to that degree of diligence which would make him an insurer of the perfection of the work of the masons. The referee found that there was no want of proper care and attention by the plaintiff.

It is impossible for this court to determine whether a defense to the claim of the masons for their last payment would have been successful. That question was not on trial. They may have been able to show that the defendant had accepted the house, and that the refusal of the certificate was of no further consequence. It seems quite clear that the defendant was not required to resist the claim of the masons, even if his defense would have been available, in order to be able to set up as a defense in this action that the plaintiff had not carefully and diligently performed his agreement. The agreement with the plaintiff was wholly independent of that between the defendant and the masons. While it was the duty of the masons to perform their work according to their agreement, it in no manner relieved the plaintiff from the performance of his duty, because the masons were obviously derelict. The more apparent was the breach of the contract by the masons, the less was the degree of diligence required on the part of the plaintiff to ascertain the defects, now so apparent, and the greater the neglect.

The evidence bearing upon the question of diligence is somewhat conflicting. It is evident that some of the opinions of the witnesses for the plaintiff are governed by the fact that it was not his duty to lay out the work for the masons. It was, however, none the less his duty, as an attentive superintendent, to see that the work was correctly laid out. The uncontradicted evidence that the plaintiff had his attention called to the great elevation of the balcony, and that he then insisted that it was right, must be allowed great weight on this question. Such a suggestion, coming, as it did, from one of the masons, called for immediate action on the part of the plaintiff, to ascertain, by measurement or in some

other way, the certainty in a matter then easily corrected, but growing daily more expensive and impracticable.

The effect of this notice to the plaintiff may have justly operated to induce the defendant to pay the last installment due to the masons, rather than incur the hazard of contesting it by a suit in the face of evidence that the attention of the superintendent had been early called to the apparently too great elevation of the balcony, and that he had said it was right.

The plaintiff was employed for the purpose of detecting and preventing just such errors and imperfections as have actually occurred. His services were of little use if he could not, with reasonable and ordinary diligence, discover a defect of such importance, in the symmetry and regularity of the edifice, as that the front windows were higher from the beams of the first floor, and nearer to the beams above, than at the rear windows, as soon as the beams of the second floor were laid, and long before the front wall was completed.

The plaintiff can only be held for ordinary diligence, and it is quite probable, if the action was against him to recover damages for the defective construction of the building, that he would escape from liability to the defendant therefor. He is here, however, asking to recover for services that by this rule he ought to have rendered, but has not, as the Superior Court at General Term have decided. The evidence is quite sufficient to warrant such a finding. It was their province to examine the evidence as to this fact. It sustains the decision at which they arrrived, and ought not to be disturbed.

The order of the Superior Court should be affirmed, with costs.

Judgment of General Term reversed, and judgment for plaintiff.