JANE WESTERLO, APPELLANT, v. EDWARD DE WITT, RESPONDENT.

*Donatio mortis causá—Certificate of Deposit Transferable as—Question of Fact, Referee's Finding Reversed on—Open to Court of Appeals, when.*

A certificate of deposit may be transferred by mere delivery as a donatio causâ mortis.

When the finding of the referee is reversed by the General Term on a question of fact, and a new trial is ordered, from which an appeal is taken to this Court, all the questions of fact and law are open to review in this Court.

THIS was an action brought by the Appellant to compel the return of a certificate of deposit of $1,500, or the value of the same, delivered by the Plaintiff to the Defendant, under an alleged misapprehension of her rights, and in reliance upon his professional advice. The referee found for the Plaintiff the amount of her claim. The General Term of the First District reversed the judgment, on questions of fact, and ordered a new trial. The Plaintiff appeals from this order, stipulating that if the same is affirmed, judgment absolute may be rendered against her.

The referee found and reported the following facts, as proved before him: That previously to her decease Mrs. Clinton was the owner of $600 in money, and a certificate of deposit of $1,500 in the New York Life Insurance and Trust Company, dated May 4, 1854; that Mrs. Clinton arrived at the house of her stepdaughter, Mrs. Jones, in Poughkeepsie, on the 21st of June, 1855; that she was attacked with paralysis on Sunday, June the 26th, some time in the morning, and that she died on the second day of July. Her principal disease was of the heart. For many years before this time, Miss Cornelia Westerlo had been an intimate friend of Mrs. Clinton, and for a year or two had been residing with her as her personal friend and attendant, at the express request of Mrs. Clinton. The families were very intimate, and Mrs. Clinton and the father of Miss Westerlo were cousins. In the spring of 1854 Mrs. Clinton had invited Miss Westerlo to live with her permanently, make her house her home, and remain with

her and take care of her until she died.　She accompanied Mrs. Clinton to Poughkeepsie, and was with Mrs. Clinton until and at her death.　Mrs. Clinton was taken ill almost immediately after her arrival at Mrs. Jones', and intimated an apprehension of a fatal termination to her disease.　On the Sunday on which she was attacked with paralysis, she requested Miss Westerlo, who was in her room alone with her, to lock the door, get paper and pencil, and make a memorandum of remembrances which she . wished to leave her friends, which she accordingly did.　She at this time intimated that she was growing weaker and weaker. After a little while she told Miss Westerlo to go to a closet in her (Mrs. Clinton's) room, and in a pocket of one of her dresses, which she designated, she would find a roll of paper, and that she would bring it to her.　Miss Westerlo brought the parcel to her; it was wrapped up in a piece of paper and pinned together.　Miss Westerlo then sat down, and Mrs. Clinton opened the parcel. There was in it a small roll of bank bills, amounting to six hundred dollars or thereabouts, which she counted over.　There was also in it the trust certificate in question.　Mrs. Clinton opened the paper and read it.　Mrs. Clinton then rolled together the certificate and bills in the same paper, and pinned them together, and then called Miss Westerlo to her, and handed the parcel to her, saying: "Nelly, I give this to you; this is for yourself; no one knows anything about it, and I do not wish to tell of it."　She further said she had remembered her (Miss Westerlo) in her will in addition.　She then told Miss Westerlo to put away the parcel where she had found it, as that was the safest place, and desired her to lock the closet and place some article of furniture against the door.　Miss Westerlo returned the parcel to the pocket of the dress as directed by Mrs. Clinton.　Mrs. Clinton left a last will and testament, in and by which she bequeathed to Miss Westerlo a legacy of $1,000 and all her wardrobe: the dress in which the parcel aforesaid was placed was included in said bequest.　After Mrs. Clinton's death the dress came into Miss Westerlo's possession and she retained it.　Edward De Witt, the Defendant, was appointed an executor in and by said will, and subsequently qual-

ified as such. De Witt had been, many years prior to Mrs. Clinton's death, her legal adviser, and drew her will. Miss Westerlo knew that he had been such legal adviser to Mrs. Clinton, and that he was a lawyer, but did not know him personally at the time of Mrs. Clinton's death. He had never been a legal adviser to Miss Westerlo, nor employed by her in a professional capacity in any way. On the morning of the funeral Miss Westerlo mentioned the subject of the money and certificate to Mrs. Jones, stating in substance that she was certain Mrs. Clinton intended to give her the money, but that she was not sure or positive about the certificate, and consulted her as to the propriety of informing Mr. De Witt, the executor, in respect thereto. On the same day an interview was had between Miss Westerlo and Mr. De Witt, Mrs. Jones being present. At this interview Miss Westerlo produced the parcel containing the bills of money and certificate. Mr. De Witt inquired of her how the certificate came into her possession, and she related the circumstances in substance as above given, and asked whether the whole was not a gift to her from Mrs. Clinton, and what she ought to do with it. De Witt did not dispute her right to retain the money; but as to the certificate said to her, in substance, that he was confident that that was not intended as a gift, and that the money could only be converted from the Trust Company through the executors of Mrs. Clinton's estate; that if she retained the certificate it could be recovered from her by the executor through legal means; that an unendorsed paper like the certificate was of no more value than waste paper, and that she could not recover it in law. Miss Westerlo told him that Mrs. Clinton had spoken of him as a reliable lawyer, and therefore she took his advice. She then left the certificate with him to determine, of his own accord, what he should do with it, he promising that in case she needed it to show to an adviser, she should have it. Mrs. Clinton was in her life familiar with business transactions relating to securities for money. The claim and certificate were duly assigned by Miss Westerlo to her mother, the present Plaintiff, before suit brought.

As conclusions of fact he found that Mrs. Clinton intended to

make a donation to Miss Westerlo of the entire parcel, containing both money and certificate, at the period above stated; that she did this knowing the contents of the parcel, and in contemplation or anticipation of her own approaching death; that the delivery was absolute, and that the place designated for its temporary deposit (the pocket of her dress) was so designated as a place of safety, and not with the view of retaining the possession or control of it herself; that Miss Westerlo, not knowing the legal character or nature of the certificate, and being uncertain in her own mind as to the exact effect or purport of the language used by Mrs. Clinton at the time of giving her the parcel, as applicable to the certificate, consulted Mr. De Witt, as the person known to her to have been for a long time the legal adviser of Mrs. Clinton, for the purpose of procuring his advice as to what, under all the circumstances, she should do with it, and 'that Mr. De Witt did give the advice above detailed, as legal advice, and expressive of his opinion as a lawyer, as well as of his own rights as executor; and that Miss Westerlo acted on such advice in surrendering to him the certificate, and under a mistake as to the actual ownership of the certificate, and was misled by the advice; that the parties did not stand on an equal footing in respect to knowledge of the effect of the transaction in question, the Defendant having, in that respect, the advantage, while, at the same time, it is perfectly clear that he acted in the advice he gave conscientiously, and on an undoubting conviction of its correctness, and that such advice was given, and such claim of executor made, under a mistaken apprehension as to the real ownership of the certificate and the moneys secured thereby.

As conclusions of law he found that the certificate was a proper subject of a gift, causâ mortis; that the transaction above stated constituted a valid gift of the certificate, causâ mortis, and that the title to the certificate and the moneys represented thereby, passed, by virtue of the delivery of the certificate, to Miss Westerlo without endorsement; that the interview between Miss Westerlo and the Defendant took place under circumstances creating a relation of confidence between them, and that under the cir-

cumstances the advice given by the Defendant, with the claim of
title to the certificate, as executor, advanced by him, and acted
upon by her, both acting under a mistaken apprehension as to the
true ownership, but the Defendant standing in a better position
as to knowledge in respect to the effect of the transaction, entitles
the Plaintiff to look to the Defendant personally for a surrender
of the certificate, or payment of the moneys represented thereby,
and actually received by him; that the claim is assignable in its
nature, and passed by the assignment in question to the present
Plaintiff, and that the Plaintiff is entitled to recover of the De-
fendant the amount claimed in this suit, with interest.

*John L. Sutherland* for Appellant.
*Charles Jones* for Respondent.

HUNT, J.—The general disposition of the Courts is to sustain
the referee in his finding of facts. By section 272 of the Code,
power is given to the General Term to review the finding of a
referee, and in case of reversal upon the facts, the question
whether the judgment should have been reversed, either upon
questions of fact or of law, shall be open to review in this Court.
In examining the evidence a majority of the judges of the Su-
preme Court took a different view of the facts and of the law
from that taken by the referee, while a minority concurred with
him in both respects. The question is now before us, and in the
same manner, and as an original question, that it was before
the General Term. In the language of the Code the " question
whether the judgment should have been reversed " is the one be-
fore us. This is not precisely the same question as if we are in-
quired of whether we should have found the same facts, and have
determined the law in the same manner. It is rather, are we so
certain that the referee was in error upon the facts, that we will
assume to reverse his judgment? If the case is doubtful his con-
clusions should not be reversed. If, upon reading the evidence,
this Court should be of the opinion that the conclusion might
well have been either way, then the fact that the referee saw the
witnesses, heard them testify, and had the nameless opportunities

of judging of their character that personal acquaintance can only give, should induce us to defer to his judgment. If, upon the other hand, we are clearly of the opinion that he erred in deciding the facts, we are bound to " reverse his judgment " (Ball *v.* Loomis, 29 N. Y. 412; Peterson *v.* Rawson, 34 N. Y. 370).

After a careful reading of the case, I am inclined to concur in the view of the referee, and of the judge who delivered the dissenting opinion in the Court below. It is clear, upon the authorities cited, that choses in action, such as bonds and mortgages, and promissory notes not endorsed, may all be transferred by delivery only, as a donatio causâ mortis (Duffield *v.* Elwes, 1 Bligh R., N. S., 497, 542; Brown *v.* Brown, 18 Cont. R. 410; Bedell *v.* Carll, 33 N. Y. R. 581); As in the case of a gift inter vivos, the transfer of such a security would be accompanied with some inconvenience. More and different evidence would be required, in enforcing the claim, than where a specific chattel had been delivered, or an endorsement or a formal written transfer of the security had been made. Still, it is quite clear that in either case, in apprehension of death, or among the living, the gift of a mortgage or unendorsed note may be effected by a simple delivery of the security.

The evidence of Miss Westerlo establishes satisfactorily that there was an actual delivery to her of the certificate as a gift from Mrs. Clinton, in apprehension of death. She desired Miss Westerlo to go to her closet, and look in the pocket of a particular dress, in which she would find a roll of paper, which she requested to be brought to her. The parcel, wrapped in a piece of paper, and pinned together, was brought to her (Mrs. Clinton), who proceeded to open it. It contained the certificate in question, and a small roll of bills, amounting to $600. Mrs. Clinton counted the money, and read over the certificate. She then rolled the bills together in the same paper with the certificate, and handed the whole to Miss Westerlo, saying : " I give this to you; this is for yourself; no one knows anything about it, and I do not wish to tell of it." She then told Miss Westerlo to put away the parcel where she had found it, as that was the safest place, desired

22

her to lock the door, and place some article of furniture against it. Mrs. Clinton at the same time told Miss Westerlo that she had also remembered her in her will, and indulged in strong expressions of love and affection. Miss Westerlo placed the parcel in the pocket, as desired. The referee held this to be a completed delivery, and that Mrs. Clinton did not expect or intend to retain any control over the possession of the money or security after that date. I find no occasion to reverse his judgment on this point; and I see nothing in the manner of detailing the transaction by Miss Westerlo afterward that interferes with this view. She was frank, ingenuous; stated the facts as they occurred, with her doubts as to their effect, and asking the advice of others who were supposed to be better informed than herself. The money and the security stand upon the same ground. Both are susceptible of being presented as a gift by delivery. They were both in the same envelope, and the same words were applied in giving each. Handing her the paper containing both the money and the certificate, Mrs. Clinton says: "I give this to you; this is for yourself." It is impossible to apply any rule which would make this a valid gift as to the money, and invalid as to the certificate. They must stand or fall together. I think it was good as to both.

If the view I have taken is the correct one, the certificate was given to Mr. De Witt, by Miss Westerlo, upon a mutual misunderstanding of her rights; he supposing and advising her that the had no title to the certificate, but that the same belonged to the estate of Mrs. Clinton; and she, in reliance upon such advice, giving to him the certificate upon which he afterward received the money.

The referee finds that Mr. De Witt acted in entire good faith; in which conclusion I concur entirely. Mr. De Witt had not qualified as executor, nor, according to the ordinary course of events, had the will been proved when he received the certificate. If it has been entered in his accounts, the judgment of this Court that it was so received and entered by mistake, will be a sufficient warrant for its repayment by him. He received, him-

self, under the circumstances mentioned, the property of Miss Westerlo, in the form of a certificate. Its value should now be restored to the Plaintiff.

I am for reversal of General Term, and that judgment of referee be affirmed.

Judgment accordingly.

<div style="text-align:right">

JOEL TIFFANY,
State Reporter.