## TAPLIN v. WILSON.

*Mistake — of law — ignorantia juris non excusat.*

Defendant, the father of plaintiff's wife, gave her furniture and money to buy furniture, which was to be used during her life, and, if she died childless, the furniture given and purchased was to go back to defendant. Plaintiff was ignorant of this agreement. The wife died childless. Some time afterward defendant demanded the furniture, and plaintiff, after deliberation and taking legal advice, voluntarily gave it up. *Held*, that plaintiff could not recover back the property, on the ground that at the time he delivered it he was mistaken as to his rights, and acted under such mistake.

When there is a disputed question between two persons, and they settle it voluntarily, without fraud, and with knowledge of the facts, the settlement should stand, although the courts would have settled it in a different way.

APPEAL by plaintiff from a judgment in favor of defendant entered upon the report of a referee.

The action was brought by Clinton Taplin against Abraham Wilson to recover the value of personal property alleged to have been wrongfully converted by defendant.

The plaintiff married Mary Ann, a daughter of the defendant. She died childless, in October, 1870. After her marriage the defendant furnished her certain articles of bedding, and gave her money to buy furniture. She bought furniture with this money, and the furniture and bedding were taken to the plaintiff's house. They were used there in the family till her death.

When the money and bedding were delivered to her, it was agreed that she should have the property during her life-time, with the right to use it up. If she died without children, it was to come back. The plaintiff had no knowledge of this agreement.

After Mary Ann's death, the property remained in the plaintiff's possession, and was used by him as his own. In January, 1872, the defendant claimed the property from the plaintiff. The plaintiff replied, that he would let him know in a fortnight what he would do. The plaintiff then took legal advice.

What that advice was does not appear. But, after taking such advice, the plaintiff told the defendant that he wanted to give up the property, and that the defendant might take it. In a day or two the defendant sent to the plaintiff's house and took it. The

Taplin v. Wilson.

plaintiff was present when some was taken, and aided in preparing some articles for removal. It was voluntarily delivered by the plaintiff to the defendant on this claim of ownership. About a year afterward the plaintiff demanded the property, and then brought this action.

*L. M. & L. K. Soper,* for respondent. The following are cases where relief was granted on the ground of mistake of law. *Lansdown* v. *Lansdown,* 1 Mosely, 364; *Lawrence* v. *Beaubien,* 2 Bailey, 623, *Fletcher* v. *Tollet,* 5 Ves. 14; *Bingham* v. *Bingham,* 1 Ves. Sen. 126; *Farmer* v. *Arundel,* 2 W. Bl. 825; *Bize* v. *Dickason,* 1 T. R. 286; *Underwood* v. *Brockman,* 4 Dana, 309; *Simpson* v. *Vaughan,* 2 Atkins, 33; *Price's Ex.* v. *Fuqua's Ad.,* 4 Munford, 68; *Ray and ano.* v. *Bank of Kentucky,* 3 B. Monr. 510; *Perrot* v. *Perrot,* 14 East, 423; *Clifton* v. *Cockburn,* 3 Myl. & Keen. 76; *Cockerell* v. *Cholmeley,* 1 Younge & Coll. 418; *Willan* v. *Willan,* 16 Ves. 72; *Onions* v. *Tyrer,* 1 P. Wms. 345; *Turner* v. *Turner,* 2 Rep. in Ch. 154; *Evans* v. *Lewellyn,* 2 Bro. Ch. 150; *Edwards* v. *McLeay,* Coop. 307; *Fitzgerald* v. *Peck,* 4 Litt. 125; *Gratz* v. *Redd,* 4 B. Monr. 190; *Northrop* v. *Graves,* 19 Conn. 548; *Stedwell* v. *Anderson,* 21 id. 139; *Culbreath* v. *Culbreath,* 7 Ga. 64; *Sanford* v. *Sanford,* 2 N. Y. Sup. 641; *Lammott* v. *Bowlys,* 6 Harr. & Johns. 500; *Ancher* v. *Bank of England,* 2 Dougl. 637; *Pusey* v. *Desbouvrie,* 3 P. Wms. 315; *Haven* v. *Foster,* 9 Pick. 112; *Champlin* v. *Laytin,* 1 Ed. Ch. 467; 6 Paige's Ch. 189; 18 Wend. 407; *Hitchcock* v. *Giddings,* 4 Price, 135; *Leonard* v. *Leonard,* 2 Bell & Beatty, 184; *Mead* v. *Johnson,* 3 Conn. 592; *Lowndes* v. *Chisholm,* 2 McCord's Ch. 455; *Hopkins' Exec.* v. *Mazyck,* 1 Hill's Ch. Cas. 250; *Glassell* v. *Thomas,* 3 Leigh, 113; *Rawlin* v. *Pollock,* 7 B. Monr. 33; *Levy* v. *Burk,* 1 Binn. 27.

*J. MacNaughton,* for respondent.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

LEARNED, P. J. Whether there were one or two feather beds was a question of fact. The schedule of articles demanded mentions one. And it was that schedule which, it was admitted by the defendant, contained a list of the property taken. There was some evidence conflicting, but the finding of the referee should

govern.   It is not necessary to examine as to the  mirror and  three quilts.   The plaintiff himself helped  to do  up the mirror .when it was taken.

In  the  view  I  take  of this case, it  is  unnecessary  to  decide whether, in the light of the  decision in *Barnes* v. *Underwood,* 47 N. Y. 351, the plaintiff could  maintain this action without  taking out letters of administration on his wife's estate.

I pass to another point.   And here it is important to notice that neither party stood in any confidential relation  to the other.   The two met on equal footing, each knowing all  the facts, except  that the plaintiff did  not know of the ante-nuptial agreement.  If he had known this, he would have had knowledge of  a fact tending to strengthen the defendant's rights, and to weaken his own.

Nor was there any fraud or  concealment, or want of due delib-eration.   The defendant claimed that he owned certain property in the plaintiff's possession.   He stated this claim  to the plaintiff. The plaintiff deliberated, took advice with  a full knowledge of all the facts on which his own rights (whatever he had) rested, told the defendant to send for the property, and himself personally assisted in preparing for its removal.   Can he now recover on the  ground that he might then have successfully refused to surrender ?

There is a sound rule that it is for the good of the State that there should be an end of litigation.   And one application of that rule is that, when there is a disputed question between two persons, and  they settle it voluntarily, without fraud and with knowledge of the facts, the settlement should stand, although the courts would have settled it in a different way.

The plaintiff in this case knew that the property had come to his deceased wife from her father; he knew that she had had no chil-dren and that he had married again.   He might have felt that there was a natural propriety, under such circumstances, in returning the property to the father, from whom it came, and with whom he had no longer any connection.   At any rate, whether he was influenced by this motive, or by some other, the delivery was, in the fullest sense, voluntary — intended to be a surrender of the property to one who claimed to be the owner.

But it is urged by the appellant that the plaintiff, at that time, thought that legally the father was entitled to the daughter's estate. Perhaps the plaintiff may have been so advised under *Barnes* v. *Underwood,* 3 Lans. 526.

In passing we must notice that, if he had been guided by that case, he must have seen that the father could take only through distribution by the husband as administrator, and that he, as husband, had the right of administration and of possession as administrator until he had fully administered. Following that decision the plaintiff would have understood that it would be only when he, as administrator of his deceased wife, had settled the estate, that the defendant could claim, and then as distributee.

Assuming, however, that the plaintiff, on the facts, thought the defendant legally entitled, we are then brought to the rule that ignorance of the law excuses no one. This is a correct and a settled principle: "The rule that every man who has a full knowledge of the facts is presumed to understand his legal rights, is as much respected in courts of equity as it is in law." Per BRONSON, J., *Champlin* v. *Laytin,* 18 Wend. 407, 413, where may be found a review of the cases. It cannot be necessary to go over the many cases which establish this rule. It is enough to refer to *Jacobs* v. *Morange,* 47 N. Y. 57, which involved a point similar to that in this case ; that is, a reversal by the Court of Appeals of a decision of the inferior court upon which the parties had acted. The court sustained the same doctrine laid down by Chancellor KENT in *Lyon* v. *Richmond,* 2 Johns. Ch. 51, 60 : "A subsequent decision of a higher court in a different case, giving a different exposition of a point of law from the one declared and known when a settlement between parties takes place, cannot have a retrospective effect and overturn such settlement."

This is not properly a question of estoppel. It is rather the same doctrine by which a party, who has voluntarily settled with another a disputed claim, shall not be allowed to open that settlement, on the ground that he might have done better for himself. "Compromises are to be encouraged because they promote peace ; and when there is no fraud, and the parties meet on equal terms and adjust their differences, the court will not overlook the compromise." *Farmers' Bank of Amsterdam* v. *Blair,* 44 Barb. 641.

Some cases cited by the appellant are thought to be in conflict with these principles.

In *Sanford* v. *Sanford,* Ct. App. Mss. (2d time), the husband had lent money and taken a note to the order of himself and wife, jointly. It was held that this was a gift to the wife, if it remained unpaid in the hands of the husband at his death, and she

survived. When a committee of the husband's estate was appointed, she handed the note to the committee. That, of course, did not preclude her from claiming it after his death. For in his life-time it was rightfully in his possession. Again, after his death, she handed it to the appraisers of his estate, as a part thereof, and it was so inventoried ; but the appraisers were not parties making a claim to the ownership of a note.

She adjusted no controversy with them, and could have adjusted none. Neither of these transactions partake in the least of a claim to ownership, inconsistent with her title, and of a surrender in voluntary compliance with such claim.

*Westerlo* v. *De Witt*, 36 N. Y. 340, was a case where the plaintiff, a lady, having in her possession a piece of property, which had belonged to the testatrix, consulted the defendant, who was the executor and also a lawyer ; was advised by him that the property belonged to the estate, and therefore gave it up. The parties were not on an equal footing. The plaintiff did not act on her own opinion, or on that of independent counsel. She accepted the advice of the opposing claimant. By giving advice he stood in a confidential relation to her. No such settlement of a dispute could stand, if questioned.

The case of *Pitcher* v. *Plank Road Co.*, 10 Barb. 436, was where an infant made a compromise of a penalty to which it was claimed he was liable. An infant could not (except by consent of the court) legally compromise or settle a claim. Therefore, that case is not in point.

There is not, so far as I see, any proof in the present case that there was a mistake of law or of fact. And certainly if the plaintiff knew all of the facts, and understood their legal effect, he ought not to recover back property which he voluntarily gave up.

The judgment appealed from should be affirmed.

JAMES, J., dissenting. As I understand the rule of the common law marriage was an absolute gift to the husband of the goods, chattels and personal property of which the wife was actually possessed at the time of the marriage, and of such as should come to her during coverture; the title vesting in him by marriage, he might use and dispose of, the same as his individual property, and at his death it would go to his representatives, and not to his wife if she survived.

The acts of 1848 and 1849 did not change the rule of the common law further than to suspend its operation during the life of the wife, allowing her to use or dispose of her property. They did not prevent the estate from vesting, or the husband's right to possession, subject to such suspension, so that at the wife's death so much as remained undisposed of was the husband's, without any action on his part.

In this case, and as to this property, the plaintiff, on the death of his wife, took absolutely as owner under and by virtue of his marriage, and he was not required to perfect his title, possession, or right to possession, by administration. See *Vallance* v. *Bausch*, 17 How. 243; *Ryder* v. *Hulse*, 24 N. Y. 372; *Ransom* v. *Nichols*, 22 id. 110.

I do not think this view is affected by the case of *Barnes* v. *Underwood*, 47 N. Y. 351, as this question was not in that case; the husband there having taken out letters, the contest was as to who was entitled to the estate. But if administration were necessary, it goes simply to the plaintiff's capacity to sue, and should have been taken advantage of by answer. Code, § 148. The counsel in no manner alluded to this question, in their argument; the point was not insisted on, *nor even mentioned* in the respondent's brief; it does not go to the merits, and should, therefore, be deemed waived. 3 Wait's Sup. Ct. Pr. 224, 225, and cases there cited.

But no matter what we think of this question, a new trial should be granted, unless we hold the voluntary delivery estops plaintiff, and he be allowed to recover for that portion of the property taken, which belonged to him, and never to the wife. This property was not claimed, but was delivered with the other property.

I am not prepared to say that plaintiff should be barred by reason of this delivery, even conceding it a question of law. The delivery by plaintiff was in ignorance of his rights as to the property the wife received from her father. The referee finds that "the said property was delivered by the plaintiff and received by the defendant as his property, under the claim of title made thereto by the defendant, and *under no other consideration whatever*," and in his subsequent report he finds that "immediately before the delivery the *plaintiff was in possession, was the owner, and held the legal title thereto*." It appears then that plaintiff was the then owner, and surrendered the possession to the defendant, believing the defendant to be the owner, and in ignorance of any title in himself.

Taplin v. Wilson.

In the recent case of *Sanford* v. *Sanford*, in the Court of Appeals, not yet·reported, where a note had been delivered to the administrators as part of the assets, which legally belonged to plaintiff, the court said : "But it was proved on the last trial that these acts of plaintiff were done in ignorance of her rights to the note  *  *· hence there is no foundation for an estoppel," and she was permitted to recover.  To hold this plaintiff estopped for the reason stated would be unjust.  The defendant has got property to which he is not entitled, and the plaintiff has lost property to which he is clearly entitled.

The cases cited under plaintiff's twelfth point demonstrate quite satisfactorily that in a case like this, this court, as a court of equity, has the power, and ought to grant a new trial.

In my judgment the true rule in such cases is that laid down by Lord MANSFIELD in *Bize* v. *Dickason*, 1 T. R. 285, that is, "if a man has actually paid what the law would not have compelled him to pay, but what in equity and good conscience he ought, he cannot recover it back ; but when money is paid under a mistake, which there was no ground to claim in conscience, *the party may recover it back.*"  *In this case the mistake was mutual.*

The defendant, when he claimed the property, believed he was the owner.  This view is the most favorable to him, for if, when he claimed and demanded the property, he knew it was plaintiff's, he would be guilty of a fraud in claiming and· demanding it as his. *The property, then, is plaintiff's, and the possession was surrendered to defendant through mutual mistake.*  The defendant conceded on the trial that he "*still retains*" the property, and the parties may therefore be restored to their original position.

Where rights have been impaired through mutual mistake of the parties, and these rights can be restored without injury to either, and the rights of third parties do not intervene, a refusal to grant relief could rest on no sound principle.  The doctrine of estoppel or mistake of law has no application.  *Westerlo* v. *De Witt*, 36 N. Y. 340 ; *Sanford* v. *Sanford*, before cited ; see also 2 Alb. L. J. 405, *et seq.* ; 3 id. 448, *et seq.* ; 4 id. 7, *et seq.* ; 6 id. 103, *et seq.*; 23 Am. Jur. 146, 166, 371, 412, where the cases are all reviewed.

I think the judgment should be reversed and a new trial granted, costs to abide the event.

*Judgment affirmed.*