NEW YORK COUNTY. — HON. D. C. CALVIN, SURROGATE.— September, 1877.

## MONTGOMERY v. MILLER.

*In the matter of the estate of DAVID REAY, deceased.*

The reception without objection of evidence of a transaction had between the decedent and a witness for the contestant of an executor's account, given on cross-examination, before the witnesses's incompetency to testify concerning it under § 399 of the Code of Procedure was disclosed, is no waiver of its inadmissibility, and the contestant may upon discovering the incompetency move to strike out the evidence.

Where it appeared that the testator, a year before his death, had stated to his counsel that he wished to give a relative something, and had put an envelope in the safe (shown to have been used in common by him and his partner,) containing papers which he wished to have given her, but it did not appear whether he desired his counsel or his partner to make the delivery; that on the day of his death the partner found the envelope lying unsealed in the testator's room, from which he had been removed two days before; that the envelope bore an indorsement signed by the testator "For" the relative, describing her, which

envelope with its contents, was after the testator's death delivered to such relative by the partner, and subsequently by the counsel, and there was evidence tending to show that the testator had himself opened the envelope and taken some of the papers from it; *Held* that these facts did not make out a delivery of possession and a parting with the dominion by the testator, so as to constitute a valid gift *inter vivos*, and that the subsequent delivery was insufficient to carry the title to the enclosures.

*It seems* that a delivery of a promissory note or of a mortgage, without indorsement or assignment by the person to whom they run, is effectual to pass the ownership of them as a gift.

THE report of the auditor, on the accounting of the executor, which account was contested by John W. Montgomery, and other legatees, contained findings, contested by the executor, that the latter was chargeable with the amount of a bond and mortgage executed by William A. Miller and wife, for $1,100, with interest from February 12, 1869, also with $873.30, the amount of two notes or due bills, of Reay and Pollock given to the decedent, payable on demand and bearing date January 1, 1870, one for the sum of $600, the other for $127, including interest to November 20, 1872, and with interest on $1,727 since that time.

The facts were substantially as follows: On the 8th of March 1871, the day of the testator's death, Hugh I. Pollock, his partner, found in testator's room, lying on a trunk, an unsealed envelope, with this indorsement upon it, in the hand writing of the testator. " For Jane Miller, of Patterson, New Jersey; David Reay," which envelope contained the mortgage and two notes above described, together with certain certificates of stock, the latter not shown to be available, but the bond accompanying the mortgage was not in the envelope. Pollock immediately delivered

the envelope and its contents to Mrs. Miller, wife of the executor, in the presence of his co-executor and others.

This envelope with these contents, and also two checks, one for $453.25, and the other for $534, sealed up, had been placed by said Pollock about a week prior to January 1, 1871, in an inner safe of the iron safe used by the firm, decedent and Pollock each having a key to the safe, and inner safe, and Pollock had not had possession of such envelope from the time of such deposit until it was found open, and the two checks were subsequently found in the safe by themselves.

The mortgage contained the following endorsement the hand writing of the executor. "Received payment on the within mortgage, and authorize the clerk to cancel the same.

"WM. ALLEN MILLER,

"Executor of David Reay, deceased.

"Cancelled of record January 7, 1871.

"JAMES H. BLAUVELT, Clerk."

The executor had prepared the cancellation of the mortgage under the direction, and at the request of, his wife.

About a year before his death, the testator had stated to Isaac Van Winkle, Esq., his counsel, that he wished to give Mrs. Miller something, but did not state what, but said to Mr. Van Winkle that he had put an envelope in the safe containing papers, which he wished to be given to Mrs. Miller, by him, or somebody, and the counsel testified that he came to the conclusion that it was by Mr. Pollock.

The envelope with the papers found were handed by Mrs. Miller to Mr. Van Winkle, a few days after testator's death, and she at the same time handed him the bond.   Mr. Van Winkle retained the papers about a week, and handed them back either to Mr. or Mrs. Miller, both being present, stating that deceased requested him to hand them to Mrs. Miller.

Pollock, called as a witness for the contestants, testified as to the property of testator, etc., but not as to any *transaction* or *communication* between him and decedent, whereupon he was examined by the executor's counsel and testified without objection, that the decedent took the papers mentioned, together with two checks, from the safe, placed them in the envelope, endorsed it with the address of Mrs. Miller, sealed it, and handed the envelope to him with instructions to hand it to Mrs. Miller, as a New Year's present, when she came down ; that he put it in the safe and never removed it, nor authorized any one else to do so, and first found it had been removed after testator's death; that Mrs. Miller had not come down to the city during the time of the delivery to him of the envelope, and the death of the deceased ; and that she resided at Patterson, New Jersey, at the time.

Pollock was one of the sureties on the bond of Miller, executor, the executor being a non-resident, and on cross-examination by the counsel of the contestant, he testified to the fact of his being such surety, the penalty of the bond being $5,000, whereupon counsel for the contestant swore that he was not aware of the facts at the time of the examination of Pollock, and moved to strike out so much of the testimony as

related to the *transactions* and *communications* in relation to the security contained in the envelope between witnesses, and decedent, to wit: " He handed it (the envelope containing securities) to me; told me to hand it to Mrs. Miller when she came down, as a New Year's present; he said to me, 'Pollock, will you be kind enough to take this package,' handing to me the enclosed package in question, 'and deliver it to Mrs. Miller, my niece,'" which motion the auditor granted.

Mrs. Miller was a favorite niece of the testator, for whom he had an especial affection. The auditor found in substance that if the testimony stricken out were considered competent, the evidence did not sustain the gift, for the reason that it did not show a delivery of possession, and a parting with the interest of the donor, and on the ground also that the securities in question could not be validly transferred by mere manual delivery *inter vivos*.

Some additional facts appear in the opinion.

TRAITEL & PLATZEK, *for John W. Montgomery.*

F. D. McDONALD, *for the executor.*

THE SURROGATE. — The first question is, whether the testimony of the witness Pollock was properly stricken out by the auditor.

Section 398, of the Code, abrogates the old common law rule, which excluded interested witnesses from testifying, and but for that section that rule would still prevail; but that section excepts from this radical and sweeping change, certain cases provided in the next, the 399th section, among which are that the

persons interested in the event of an action or proceeding, shall not be examined in regard to any personal transactions or communications between such witness and a person, at the time of such examination deceased, against a legatee, &c. In such a case it would seem logically to follow, that the same interest which excluded before section 398, now excludes in the excepted cases, for there is nothing in either of the sections to indicate a different intent or to define the kind of interest to disqualify.

As surety on the bond of the executor, the witness Pollock had a direct interest in the result of the proceedings, for the decree would be evidence against him on a suit on his bond. Willcox v. Smith, (26 *Barb.*, 316).

But it is claimed by the counsel for the executor, that inasmuch as Pollock was called as a witness by the contestants, he became a competent witness in the case, to testify to any facts pertinent to the issue, on examination in behalf of the executors, and the cases of Varick v. Jackson, (2 *Wend.*, 201); and Fulton Bank v. Stafford, (*Id.*, 483), are cited as authority for this proposition, but it should be observed that these cases were decided long prior to the code, under the rule of evidence which excluded the witness from being sworn in chief, in a case where he was interested, and when a party knowing the interest of a witness called him, he thereby in effect declared him to be a competent witness, and was estopped from alleging his incompetency on the ground of interest. But in this case under the different rule prescribed by the code, the

witness called by contestants was competent to testify to such matter as he was called to prove, but it would be very illogical to hold that because he had been called to give competent testimony, the party calling him had waived all right to object to his giving testimony in violation of a positive statute, and I am of the opinion that his testimony was liable to the objection raised by the statute, and that his having given it without objection before his suretyship was known, did not waive the right of the contestant to raise the objection, as soon as his interest was discovered, and that the motion to strike it out was in time, and properly granted by the auditor, because an objection taken to his being sworn as a witness would have been unavailing even if based upon the ground that he was interested, for it did not then appear that he was called for the purpose of proving a *communication* or *transaction* with the deceased.

The next question is, does the evidence not stricken out show a gift *inter vivos?* The substance of the testimony is that about a year before his death the testator stated to his counsel, Van Winkle, that he wished to give Mrs. Miller something, and had put an envelope in the safe containing papers, which he wished to be given to her, but whether by the counsel or Mr. Pollock he could not say; that on the day of the death Mr. Pollock found the unsealed envelope lying on deceased's trunk in his room, from which room deceased had been removed two days before to the hospital, which envelope contained the mortgage, certificates of stock, and two notes above referred to, the envelope bearing the endorsement in the hand-

writing of the deceased above stated, which envel-
ope, with its contents, was delivered to Mrs. Miller.
The evidence also tends to show that this was the
same envelope which had been placed in the safe
sealed, to which safe only the deceased and Pollock
had access, and from which some of the papers had,
by some person, presumably the deceased, been taken.
The mortgage appears to have been cancelled, under
the direction of Mrs. Miller, after the envelope and
papers were delivered to her by Pollock; and a few
days after testator's death Mrs. Miller handed the
package to Mr. Van Winkle, together with the bond
which accompanied the mortgage, and after about a
week he returned the same to Mr. or Mrs. Miller, in
the presence of both, saying that deceased requested
him to hand them to Mrs. Miller.

It is quite evident from the testimony that this
latter delivery was not made in conformity to the
suggestion of the deceased, about a year before made
to Mr. Van Winkle, for it appears that there had
been a pretended delivery thereof to Mrs. Miller
by Mr. Pollock, and the custody which Mr. Van
Winkle obtained of the papers, was from Mrs. Miller
herself.

In the absence of Mr. Pollock's testimony, relating
to the interview between him and the deceased, there
seems to be no evidence that any of the papers which
were found in the open envelope upon deceased's
trunk, on the day of his decease, were the papers
intended by him to be delivered to Mrs. Miller. It
only appears that the papers in question were found
in this open envelope, which envelope bore the

11

direction, "for Jane Miller, of Patterson, New Jersey. David Reay."

It is claimed that the delivery of the papers in question was complete when they were delivered to Mr. Pollock for the purpose of being delivered to Mrs. Miller by him, but the difficulty with the case seems to be that, in the absence of Mr. Pollock's testimony, there is no evidence that they were ever delivered to him, the full extent of the testimony being that the testator stated to Mr. Van Winkle that there were papers in an envelope in the safe, which he desired either Mr. Van Winkle or Mr. Pollock to deliver to her, and there seems to be no evidence amounting to a delivery of the papers to either of those gentlemen, as agent or trustee of the alleged donee, within the case of Hunter v. Hunter (19 *Barb.*, 631), and the fact that the envelope was found in the decedent's room open, affords evidence that he was in possession of the securities in question at the time of his decease, and it is quite clear to my mind that Mr. Van Winkle had no such possession as divested the testator of either title or possession of said securities; indeed the envelope being open, and concededly not in the possession of Pollock, the alleged trustee for the donee, afforded such an opportunity for interference with, and charge of, the contents by interested or designing persons, that I should regard it very unsafe to hold such a transaction to be a valid gift. Such a transaction leaves the question involved in too great uncertainty to warrant the conclusion that the securities in question ever passed to the donee.

In the case of Hunter v. Hunter, above cited, the

learned judge (at p. 638) puts the fact of delivery upon the ground that the securities in that case were delivered to a third party to be kept for the donee, she being the agent and representative of the donor, and he says: "The donor not only parted with the possession of the subject of the gift, but voluntarily gave up all dominion and control over it, so that he could not have resumed it, had he been so inclined. There is no proof that it ever returned to his possession, or that he ever attempted to exert any control over it."

In Bedell v. Carll (33 *N. Y.*, 584), Wright, J., states that: "A donation *inter vivos* differs from that of *mortis causa*, in that the title passes immediately to the donee on delivery, and the donor has no more right over the property than any other person, while the latter is conditional, to take effect on the death of the donor, who, in the meantime, has power of revocation, and may, at any time, resume possession and annul the gift."

In Brink v. Gould (7 *Lans.*, 425), Miller, J., cites several authorities to the same point, and there seems to be no question that a delivery of possession is required to make a gift valid, *inter vivos*, and that the donor must part with all interest in the subject of the gift unconditionally. Irish v. Nutting (47 *Barb.*, 370).

The case of Hunter v. Hunter above cited only holds that the delivery to a third person for the use of the donee is sufficient, and the donee's subsequent demand of the property is evidence of acceptance.

Having reached the conclusion that the testimony of Pollock was properly stricken out, and that that

which remains does not show a delivery of the possession and parting with the dominion of the securities in question, so as to constitute a valid gift, it follows that the auditor's report must be confirmed, but it seems to me proper that I should also refer to the conclusions reached by the auditor that the securities in question were such as would not pass by delivery for the purposes of a gift *inter vivos*. In this conclusion I am of the opinion that the learned auditor is in error.

In Westerlo *v.* De Witt (36 *N. Y.*, 340), Hunt, J., says: "It is clear, upon the authorities cited, that *choses in action*, such as bonds and mortgages, and promissory notes, not endorsed, may be well transferred by delivery only, as a *donatio causa mortis*. As in a case of a gift *inter vivos*, the transfer of such security would be accompanied with some inconvenience, more and different evidence would be required in enforcing the claim than where a specific chattel had been delivered, or an endorsement, or the formal written transfer, of the securities had been made. Still it is quite clear that in either case, in apprehension of death, or among the living, the gift of a mortgage, or an endorsed (unendorsed) note, may be effected by simple delivery of the security." And this authority is cited with approbation in Gray *v.* Barton (55 *N. Y.*, 72).

In Mack *v.* Mack (3 *Hun.*, 323,) it was held that a gift from a husband to his wife, of judgments and mortgages, need not be accompanied by a written assignment, and (at the close of page 325), Landon, J., says: "The objection that the judgments and

mortgages were not assigned in writing, we think not well taken," to which he cites several authorities.

In Hackney *v.* Vrooman (62 *Barb.*, 650), Mullin, J., in his opinion (page 668) discusses this question upon the authorities, and, (at page 670), uses this language: " It seems to me that whether the gift be *inter vivos* or *causa mortis*, a donee acquires a legal, as well as equitable, title to the bond and mortgage, which are the subject of the gift, by mere delivery without writing."

Upon these authorities, I entertain no doubt that the gift of the securities in question, if consummated by requisite delivery, would have been valid, without an endorsement of the notes, or an assignment of the mortgage. For the reasons above stated, the auditor's report should be confirmed.

Order accordingly.