HUBERT *et al. v.* AITKEN.

*(Common Pleas of New York City and County, General Term.   December 3, 1888.)*

CONTRACTS—BUILDING CONTRACTS—LIABILITY OF ARCHITECT.

The architect of a house designed to be heated by steam is liable for the inadequacy of the chimney for the steam-heating system, and it is no excuse that he relied on the representations of the contractor for the steam-heating, as to the requisite dimensions of the chimney.

Appeal from judgment on report of EDWARD PATTERSON, Referee.

Action by Philip G. Hubert, Jones W. Pirsson, and W. J. Hoodless against John W. Aitken for the balance alleged to be due for services as architects in the construction of an apartment house. The house was designed to be heated by steam, and defendant interposed a counter-claim for damages resulting from the inadequacy of the chimney for the purposes of the steam-heating system. Judgment for plaintiffs, and defendant appeals.

Argued before LARREMORE, C. J., and VAN HOESEN, J.

*Vanderpoel, Cuming & Goodwin, (J. R. Cuming,* of counsel,) for appellant. *Lemuel Skidmore,* for respondents.

VAN HOESEN, J. The learned referee, in answer to the twenty-eighth request of the defendant, has found that the sectional area of the boiler flues for the building was 404 inches; that the sectional area of the chimney flues designed to receive the smoke and gases from the boiler fires was, at its base, where it was entered by the boiler flue, 272 inches; that the area provided by said chimney was inadequate for the service of said boiler fires; that by reason of the inadequacy of the said chimney flue the proper combustion of the coal in said boiler fires could not be secured; that to supply the deficiency of said chimney flue the defendant will necessarily and properly be required to build a new chimney flue on the outside of said building: and that the necessary cost and expense thereof will be $1,000. But the learned referee was of opinion that the plaintiffs were not liable to the defendant for the expense of supplying the deficiencies of the chimney, because, though architects by profession, they are not experts in steam-heating; and, to use the referee's language, "all that was required of them was that they should confer with whoever became the contractor for the steam-heating, and ascertain what dimensions were required for the chimney flue to afford a draught for the steam-heating system. This they did, and Tudor, the contractor for the steam-heating appliances, gave the dimensions. While it is obvious that this chimney was insufficient, the responsibility should rest upon the person who committed the fault."

I am unable to agree with the referee in his conclusion. The plaintiffs are architects of standing, who assume to be able to plan and superintend the construction of first-class apartment houses, to be heated by steam, and to be provided with every convenience demanded by the luxurious tastes of the day. They are not architects in a rural community, but in the first city in America. Steam-heating is, as we all know, common, if not a necessity, in all apartment houses of large size, and of a high class. It is true that houses of this description are of recent introduction; but they are now a very important part of our system of economics, for in some of the new streets they are more numerous than private residences, or tenements of the kind that formerly was in vogue. The architect who undertakes to construct a house that is to be heated by steam is groping in the dark unless he knows how large a chimney is required. It is as necessary that the architect should know what is needed to make the steam-heating apparatus serviceable, as it is that he should know how sewer gas is to be kept out of the house. No one would contend that at this day an architect could shelter himself behind the plumber, and excuse his ignorance of the ordinary appliances for sanitary ventilation by saying that he was not an expert in the trade of plumbing. He is an expert in carpentry, in cements, in mortar, in the strength of materials, in the art of constructing the walls, the floors, the stair-cases, the roofs, and is in duty bound to possess reasonable skill and knowledge as to all these things; and when, in the progress of civilization, new conveniences are introduced into our homes, and become, not curious novelties, but the customary means of securing the comfort of the unpretentious citizen, why should not the architect be expected to possess the technical learning respecting them that is exacted of him with respect to other and older branches of

his professional studies? It is not asking too much of the man who assumes that he is competent to build a house at a cost of more than $100,000, and to arrange that it shall be heated by steam, to insist that he shall know how to proportion his chimney to the boiler. It is not enough for him to say, "I asked the steam-fitter," and then throw the consequences of any error that may be made upon the employer who engages him, relying upon his skill. Responsibility cannot be shifted in that way. In the case of *Moneypenny* v. *Hartland*, (twice reported, once in 1 Car. & P. 352, and then in 2 Car. & P. 378,) it was held that if a surveyor be employed to erect a bridge and form the approaches to it, he is bound to ascertain for himself, by experiments, the nature of the soil, even although a person previously employed for that purpose by his employer has made such experiments, and has given him the result at his employer's request; and if the surveyor makes a low estimate, and thereby induces persons to subscribe for the execution of the work who would otherwise have declined it, and it turns out that, owing to his negligence and want of skill, such estimate is grossly incorrect, and that the work can be done, but at a much greater expense, he is not entitled to recover for his services.

I am of opinion that the defendant should be allowed to deduct from the plaintiffs' demand against him the cost of correcting the defects in the chimney, $1,000. I have read the appeal-book through with care, but I find nothing that warrants us in allowing a greater reduction from the judgment. I do not mean to say that the defendant has no other causes of complaint, but merely that the testimony is such that we cannot hold that the referee was not justified in deciding those matters in the plaintiffs' favor. *Westerlo* v. *De Witt*, 36 N. Y. 340. The judgment should be reversed, and a new trial ordered, with costs to abide the event, unless the plaintiffs consent that the judgment be modified by deducting therefrom $1,000; in which event the judgment will be affirmed, as modified, without costs of appeal.

LARREMORE, C. J., concurs.