(18 Misc. Rep. 621.)

### CALLANAN v. CLEMENT.

(Supreme Court, Special Term, Saratoga County. December, 1896.)

GIFTS CAUSA MORTIS—EVIDENCE.

    A valid gift causa mortis of money deposited in bank is established by evidence that, after making a will which gave nothing to the donee, the donor several times stated that she had given the bank book to the donee, and that, shortly after the injury which caused her death, the donor handed the bank book to the donee, saying to the persons present that she gave it to her, and asking one of them to keep it till the donee called for it.

Action by Amelia S. Callanan against D. Powers & Sons, private bankers, to recover $3,695.53, deposited in their bank by Phebe Steenbergh, deceased, which plaintiff claimed as a gift causa mortis. Margaret C. Clement, as executrix of the estate of the deceased, also claimed such money. By permission of the court, defendants deposited the amount claimed with the county treasurer of Saratoga county, and the action was discontinued as to them, and continued against the executrix as defendant, who was brought in by an order of interpleader. Judgment for plaintiff.

J. W. Atkinson (J. W. Verbeck, of counsel), for plaintiff.
J. W. Houghton, for defendant.

McLAUGHLIN, J. On the 26th day of May, 1885, Phebe Steenbergh, then upward of 80 years of age, died, from the result of an injury sustained on the 1st of the preceding April, leaving a last will and testament, which has been duly admitted to probate, and letters testamentary issued to the defendant. At the time of her death, she had on deposit with a firm of private bankers the sum of $3,695.53, evidenced by a bank book issued to and held by her. The controversy relates to the title to this fund, the plaintiff claiming to own it as a gift causa mortis, and the defendant as executrix of the last will and testament of the deceased. The determination of the question involved turns upon the intent of the deceased, which must be ascertained from all the facts and circumstances established by the evidence. Both parties are relatives of the deceased, the plaintiff a stepdaughter and also a niece, and the defendant a sister; and, by reason of such relationship, each claims that she was intended to be the object of the deceased's bounty. There is but little conflict in the evidence, and, except as to minor details, substantially no dispute as to the facts. What, then, was the intent of the deceased? Did she intend to give the fund in question to the plaintiff, in view of her approaching death, or did she dispose of it by the will above referred to? A correct answer can best be obtained by a review of the facts.

It appears that, some two years prior to the deceased's death, she made a will, under which the fund in question, or some interest therein, passed to the plaintiff, and nothing to the defendant; and that, on the second day after the deceased was injured, the defendant (the deceased at the time living in the defendant's house) drafted, and the deceased executed, another will, which has been admitted to probate, and under which the fund or some interest therein passed to the defendant, and nothing to the plaintiff. It also appears that in February, 1885, the deceased stated that she had given the bank book in question to the plaintiff, and that immediately following the execution of the last will there seems to have been much doubt in her mind as to whether she had made such a will, and, upon being informed that she had, she requested the defendant to produce it, and she refused; and from that time until the deceased's death the existence of the alleged will was a source of much trouble and annoyance to her. The care, custody, and disposition of the bank book were constantly on her mind; and the most casual consideration of the evidence cannot fail to impress one with a firm conviction that she wished and intended, upon her death, the plaintiff should have it. The solicitation manifested by her lest her wish and intention should be thwarted is quite pathetic; while her appreciation of the legal necessity of having evidence to establish the plaintiff's interest, in view of the subsequent events, is almost prophetic. A few days after she was injured, she called for the bank book, and, learning that the defendant had it, immediately required her to put it back with her own papers; and, lest it should again disappear, the following day, after it was returned, she gave it to an old friend, a Mrs. Filkins, to take care of, saying "she wanted it out of the house"; that "it was not safe there"; and that "it was Amelia's property." Apparently not satisfied, however, with this declaration that "it was Amelia's property," she shortly thereafter sent for Mrs. Filkins, and requested her to bring the bank book to her. This, Mrs. Filkins did, and what transpired in the room of the deceased, as she lay strapped to her bed with a fractured hip, when the bank book was produced, would seem to be sufficient to convince even the most skeptical of her intent; and that her intent might not be misunderstood, or that her gift to the plaintiff should not depend for its legal establishment or maintenance upon the testimony of one disinterested witness, she took the precaution to have two. The witness Mrs. Beers, another old friend, was sent for; and she and Mrs. Filkins went together to the deceased's room with the bank book. Mrs. Filkins testified as to this interview as follows:

"Q. State what was said by Mrs. Steenbergh. A. She says, 'I want you as a witness to show that this bank book belongs to Amelia, and I give it to her. It is her property, and I want you to take it back with you.' I laid it down on the bed, and she took it up, and looked at it, and handed it to Amelia, and said, 'Let Mrs. Filkins take it back with her until called for.' I says, 'By whom?' and she says, 'By Amelia.' She said she was confident she would not be here very long."

And Mrs. Beers testified:

"Q. What is the first thing that happened when you came in on the 18th? A. Mrs. Filkins and I went in together. Mrs. Filkins says to Mrs. Steenbergh, 'I

have brought the bank book.' Then Mrs. Steenbergh took the book, and gave it to Amelia in our presence. She says, 'You will be a witness to this, that I give this to Amelia with its contents.' Q. What else? A. Later on, Amelia gave it back to Mrs. Filkins, to take home with her."

The testimony of these witnesses is not disputed by the defendant, except as to the time when the interview is alleged to have taken place. That such an interview did take place is corroborated, not only by the fact that the bank book was in the possession of Mrs. Filkins at the time of the death of the deceased, but also by the testimony of the defendant herself. The defendant testified that she did not know that the deceased sent for Mrs. Filkins and Mrs. Beers to come there, but she did know they were there, and remained "in the room, and talked with her"; that she did not hear what took place, but "knew they had their conspiracy, because they acted it out." She also testified that, on the day following the injury, all of the deceased's papers, including the bank book, were put into her possession for safe-keeping. By whom she was thus made the custodian does not appear. It, however, does appear that she discharged her duty, so far as the bank book is concerned, with great fidelity. She says: "Part of the time, because of the necessities of the case, I carried it about my person." She drew the will under which she claims title to the book, and therefore knew what the deceased's intent was with reference to its disposition; and, if she understood the deceased intended she should have it, the inquiry is at once suggested, what were the necessities of the case which required her to carry it about her person? She admits that, while she had it, she was requested to put it with the other papers of the deceased, and that, the morning following such disposition, the deceased informed her "that Amelia had sent it out of the house." And there is no evidence that the deceased in any way disapproved of the act of Amelia in sending it out of the house, or that she requested defendant to get it back. This declaration indicates that the deceased was not only satisfied with what had been done with the book, but it also indicates an attempt on her part to acquaint the defendant with her wish on the subject. It is also to be observed in this connection that the fact that the deceased gave the bank book to the plaintiff, as testified to by the witnesses Filkins and Beers, is corroborated by the testimony of two other disinterested witnesses. The witness Voorhees testified that on the 13th of May the deceased said to her that "the bank book was Amelia's; she had given it to her"; while the witness Dater testified that as late as the 21st of May the deceased said, "I have given all my property to my daughter Amelia." The testimony of these four witnesses is not contradicted in any respect by the defendant, except as to the time when Mrs. Filkins obtained possession of the bank book. Considerable evidence was offered by the defendant to the effect that the defendant had possession of the bank book until about the 29th of April, but this evidence all came from the defendant and other interested witnesses; and if it were material to determine the exact time when the possession of the bank book passed from the defendant to Mrs. Filkins, which I do not think it is, I should adopt the

time fixed by the plaintiff's witnesses as the correct one. The reasons assigned by them are satisfactory to me. Mrs. Filkins fixes it by entries made in a diary kept by her; Mrs. Beers, by the death of a prominent person in that locality, which occurred at the time named by her, as testified to by one of defendant's witnesses. But, as already indicated, I do not consider it of very much importance. The exact time is only important as bearing on the main question,—as to whether the book was actually delivered to Mrs. Filkins; and upon that subject there is no dispute.

We have thus presented in this case a state of facts which permit of but one legal conclusion, namely, that the deceased, in contemplation of death, intended to, and, so far as she was able, did, give the fund represented by the bank book to this plaintiff. Did she in law accomplish that object? I think she did. A different conclusion would be doing rank violence to a clear and well-expressed wish of the deceased. The essential conditions of a valid gift causa mortis are all present: An intention in præsenti to give in contemplation of death; death caused by or resulting from the injury of which the donor was then suffering; delivery of the subject-matter. Westerlo v. De Witt, 36 N. Y. 340; Champney v. Blanchard, 39 N. Y. 111; Grymes v. Hone, 49 N. Y. 17; Lewis v. Merritt, 113 N. Y. 386, 21 N. E. 141; Williams v. Guile, 117 N. Y. 343, 22 N. E. 1071; Ridden v. Thrall, 125 N. Y. 572, 26 N. E. 627; Hunter v. Hunter, 19 Barb. 631; Pierce v. Bank, 129 Mass. 425; Hill v. Stevenson, 63 Me. 364; Tillinghast v. Wheaton, 8 R. I. 536.

It is, however, insisted by defendant's counsel that there was no delivery of the subject-matter. In other words, that Mrs. Filkins was the agent, not of Amelia, but of Mrs. Steenbergh; and the delivery of the bank book, not having been made by the agent in the lifetime of the principal, could not thereafter be made, for the reason that the death of the principal revoked the agency. But delivery to an agent is sufficient. Grymes v. Hone, supra. The title to the fund did not absolutely vest in the plaintiff until the death of Mrs. Steenbergh. When that occurred, it became absolute; and, by operation of law, it is deemed to have vested from the time of the delivery of the bank book to Mrs. Filkins. 1 Williams, Ex'rs, 552; Williams v. Guile, supra. A deed of real estate may be delivered to a third party with instructions to deliver to the grantee after the death of the grantor. Hathaway v. Payne, 34 N. Y. 92. A brief consideration of a few of the authorities hereinbefore cited will show that what took place constituted a sufficient delivery. Thus, in Grymes v. Hone, supra, the donor, being the owner of 120 shares of bank stock, included in 1 certificate, made an absolute assignment in writing of 20 shares to the donee. This writing he handed to his wife, to put with his will and other papers in a tin box kept by her. As he handed her the paper, he said: "I intend this for Nellie. If I die, do not give this to the executors. It is not for them, but for Nellie. Give it to her." In response to which the wife said: "Why not give it to her now?" And he answered: "Well, better keep it for the present, I do not know how much longer

I may last, or what may happen, or whether we may not need it." The wife kept it until after the death of the donor, and then delivered it to the donee. Held, that this delivery was sufficient, and the gift valid. And in Westerlo v. De Witt, supra, the donor directed the donee to bring a package of papers, which the donee would find in the pocket of a particular dress in a certain closet in the house. The package was produced, and contained, among other things, a certificate of deposit. After inspecting the package, the donor handed it back to the donee, saying: "I give this to you. This is for yourself. No one knows anything about it, and I do not wish to tell of it." And she thereupon directed the donee to put the package back in the pocket of the dress where she had found it. This the donee did, and there it remained until after the donor's death. Held, that this was a sufficient delivery. So in Williams v. Guile, supra, where the donor executed to the donee an instrument in form a bill of sale of a policy of insurance on his life, and delivered it to an attorney, with instructions to deliver to the donee in case anything happened to him. After the death of the donor the attorney delivered the policy and assignment to the donee. The court held that the transaction constituted a valid gift causa mortis.

In the case at bar the donor requested that the bank book be produced, and, on its production, took it, examined it, and then said to the two persons whom she had requested to be present: "I want you as a witness to show that this bank book belongs to Amelia, and I give it to her; it is her property"; and then immediately handed the book to the plaintiff, saying, in substance, if not in words: "Let Mrs. Filkins take it back with her, and keep it until called for by you after my death, which is not far distant." Can there be any question under the authorities cited that this constituted a good delivery, and that it was a valid gift causa mortis? I think not. Every element necessary to establish such a gift is here present: Contemplation of death; a clearly-expressed intent to give in præsenti; delivery of the subject-matter; and death of the donor without revocation of the gift.

The plaintiff is entitled to judgment, as prayed for in the complaint.