### BOWRON et al. v. DE SELDING.

(Supreme Court, Appellate Division, First Department. June 23, 1905.)

GIFTS INTER VIVOS—EVIDENCE—SUFFICIENCY.

In an action by executors to compel defendant to transfer certain stock certificates standing in his name, where it appeared that the certificates were in testatrix's possession at her death, and that they had been purchased by defendant as her agent, the evidence considered, and *held* not to establish a gift of the certificates as asserted by defendant.

Appeal from Special Term, New York County.

Action by Clara A. Bowron and others, as executors of Ellen Josephine Banker, deceased, against Herman De Selding. From an order entered on decision after trial, defendant appeals. Affirmed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

John S. Melcher, for appellant.
Augustus N. Hand, for respondents.

McLAUGHLIN, J. On the 20th of February, 1903, Ellen Josephine Banker died, leaving a last will and testament which was subsequently admitted to probate, and letters testamentary issued

to the plaintiffs, who qualified and entered upon the discharge of their duties as such. At the time of her death she had a safe deposit box in the New York Safe Deposit Company, in which were deposited certain securities belonging to her, among which the plaintiffs found 2 certificates of stock of 10 shares each of the Bowling Green Trust Company (formerly the Produce Exchange Trust Company), one numbered 1275 and the other 1276, each bearing date July 28, 1899, standing in the name of the defendant, who thereafter was requested to execute an assignment, and transfer the same to the plaintiffs as executors. The defendant, upon the ground that the certificates belonged to him and not to the deceased, refused to execute such assignment and transfer, whereupon this action was brought to compel him to do so and to account for the dividends received.

The complaint alleged that, for the purpose of purchasing such stock, Mrs. Banker drew two checks for $2,000 each, to the order of the defendant as her agent, from the proceeds of which he purchased the stock in question, had the certificates issued in his individual name, and thereafter delivered them to her. The answer admitted certain allegations of the complaint, and then alleged, as a second defense, that for many years prior to the death of Mrs. Banker the defendant acted as her confidential adviser and agent, for which he received no compensation in money; that as such confidential adviser and agent he rendered to Mrs. Banker, at her request, many valuable services, for which she several times offered in various ways to compensate him; that the certificates of stock mentioned in the complaint were taken out in his name by her express instructions; that she gave them to him by way of and as compensation for his services; that he retained them for several months, and subsequently sent them to her; that she thereupon notified him she had nothing to do with such certificates, and that the same belonged to him; that from feelings of delicacy he never requested her to return them.

The real issue at the trial was whether the certificates had, in. fact, been given by Mrs. Banker to the defendant. There was no dispute between the parties but what the same were purchased and paid for by Mrs. Banker through the defendant, who at the time was acting as her agent. The trial court found that Mrs. Banker never expressed or indicated any intention to give the certificates to the defendant; that there was no agreement or understanding between them by which the same was transferred to him as a gift, or as compensation for services; and that she never delivered the same to him. The defendant was accordingly directed to execute a transfer and assignment of the stock to the plaintiffs, and to pay them $240, the dividends conceded to have been received. Judgment was entered accordingly, from which defendant appeals.

I think the judgment should be affirmed. The evidence fairly sustains the finding of the trial court that the certificates of stock were never given to the defendant; and, indeed, a slight consideration of it demonstrates, as it seems to me, that had the finding been the other way it would have been clearly against the weight of evi-

dence.   There is no doubt about the law as to what is necessary to constitute a valid gift inter vivos.   It is a delivery by the donor of the subject of the gift, with intent to at once vest title to the thing given in the donee.   Gannon v. McGuire, 160 N. Y. 476, 55 N. E. 7, 73 Am. St. Rep. 694; Pickslay v. Starr, 149 N. Y. 432, 44 N. E. 163, 32 L. R. A. 706, 52 Am. St. Rep. 740; Callanan v. Clement, 18 Misc. Rep. 621, 42 N. Y. Supp. 514; s. c., 32 App. Div. 631, 53 N. Y. Supp. 1101, affirmed 162 N. Y. 618, 57 N. E. 1105.   It is true, after the gift has been perfected by delivery, it is not necessary that the donee shall retain possession of the property, but it may be redelivered to the donor as the agent of the donee for safe-keeping; but it is equally true that where the donor is dead, and the thing given was in his possession at the time of his death, the clearest evidence of the gift is required, and, where the persons stood in a confidential relation at the time, then the burden is upon the donee to show the necessary facts to establish the gift.   Thus it was said in Nesbit v. Lockman, 34 N. Y. 167:

"Where persons standing in a confidential relation make bargains with or receive benefits from the persons for whom they are counsel, attorney, agent, or trustee, the transaction is scrutinized with the extremest vigilance, and regarded with the utmost jealousy. The clearest evidence is required that there was no fraud, influence, or mistake; that the transaction was perfectly understood by the weaker party; and usually evidence is required that a third and disinterested person advised such party of all his rights. The presumption is against the propriety of the transaction, and the onus of establishing the gift or bargain to have been fair, voluntary, and well understood rests upon the party claiming, and this in addition to the evidence to be derived from the execution of the instrument conveying or assigning the property."

See, also, Barnard v. Gantz, 140 N. Y. 249, 35 N. E. 430; Case v. Case, 49 Hun, 83, 1 N. Y. Supp. 714; Adee v. Hallett, 3 App. Div. 308, 38 N. Y. Supp. 273; Kissam v. Squires, 102 App. Div. 536, 92 N. Y. Supp. 873.

Keeping the rule in mind, and applying it to the facts of this case, it at once becomes apparent that the proof was insufficient to sustain a finding that Mrs. Banker intended to give the stock in question to the defendant.   In purchasing the stock the defendant acted as her agent, and the fact that it was issued in his name is of no importance, inasmuch as the purchase was made with her money, and the title, therefore, passed directly to her.   Edwards v. Dooley, 120 N. Y. 540, 24 N. E. 827.   On the 10th of July, 1899, the defendant drew for Mrs. Banker two checks for $2,000 each upon the Colonial Trust Company, payable to the order of H. De Selding, agent.   They were signed by Mrs. Banker, indorsed "H. De Selding, Agent," deposited by the defendant with the Knickerbocker Trust Company in an account entitled "H. De Selding, Agent," and were paid through the New York Clearing House.   On the same day the defendant drew two checks on his account "H. De Selding, Agent," with the Knickerbocker Trust Company, for $2,000 each, payable to the Produce Exchange Trust Company in payment of the stock in question, for which he on that day, or the day following, received a receipt or temporary certificate which certified that

Selding Bros. had paid $4,000 for a subscription for 20 shares of increased capital stock of the Produce Exchange Trust Company at $200 per share, and that the receipt was exchangeable for a certificate for 20 shares when issued. This receipt, while taken out in the name of Selding Bros. (which firm was composed of the defendant and his brother), was indorsed by the defendant on behalf of Selding Bros., and direction given to the trust company that when the stock was issued it was to be in the name of the defendant. It also appeared by the testimony of one witness that the temporary certificate was shown to Mrs. Banker, and she, on the 11th of July, 1899, dictated a letter, which was signed by the defendant, to the trust company, to the effect that when the stock was issued it was to be in the name of the defendant, instead of Selding Bros. This is relied upon as some evidence of an intent on her part when the stock was issued to give it to the defendant. I do not think this evidence is entitled to the consideration claimed for it by the appellant's counsel. The defendant was the agent of Mrs. Banker. He was her confidential adviser, and it was through him that the purchase was made. Her checks in payment of the stock were to his individual order, and not to his firm's, and for this reason it may well be that she desired the stock, when issued, should be to the one to whom she had paid the money, instead of another to whom nothing had been paid. The defendant, at least, attached no importance to this fact. He did not then suppose, because she had directed the stock to be issued in his name, that she intended to give it to him, as appears from the letter which he wrote to her on the 18th of July following, in which he said:

"I succeeded in getting the twenty shares at $200 per share of the stock of the Produce Exchange Trust Company. The certificate will be issued some time next month. I have receipt for the same now. I received an offer of $217 for the stock. If you desire to sell, please advise me."

The certificates of stock were actually received from the trust company between the 28th of July and the 1st of August, and, according to the testimony of the witness heretofore referred to, were shown to Mrs. Banker, who told defendant to "keep them," and they were thereupon put in a safe in his office. How long they remained there did not appear, but it did appear, according to an allegation of the defendant's answer, that they were subsequently delivered by him to her. Stress is laid upon the words "keep them," alleged by this witness to have been used by Mrs. Banker, but, taken in connection with the other facts, they were insufficient to show an intent to give. Fiero v. Fiero, 5 Thomp. & C. 151. Besides, the testimony of this witness is not entirely satisfactory. She testified that Mrs. Banker saw the receipts or temporary certificates, and, after having seen them, dictated, in the presence of the defendant, the letter signed by him to the Produce Exchange Trust Company asking that the stock when issued be in the name of the defendant instead of his firm. This letter was dated the 11th of July, and, if what she says took place, it is difficult to understand why the defendant, seven days later, should have written her that he had "succeeded in getting the twenty shares at $200 per share

of the stock of the Produce Exchange Trust Company." He had gotten nothing in the meantime, and there had been no change, so far as appears, in the transaction between the 11th and 18th, and the stock was not in fact received before the 28th. There is nothing to show any intention on the part of Mrs. Banker to make a valid gift. The fact that she declared an intention at one time to give the defendant some other stock is of no importance. The question is, did she give this stock? There is nothing to show that she did, and every act of the defendant, as it seems to me, indicates to the contrary. It was delivered by him to her, and she retained it until her death. No explanation of this fact is offered, and the intention of the parties, as indicated thereby, necessarily follows, viz., that both of them regarded it as her property. In addition to this, the entries in defendant's books indicate the same thing. The account is headed: "H. De Selding, Agt., in a/c with Mrs. E. J. Banker." He there charges himself with the $4,000 received for the purchase of the stock, and credits the account with the payment of $4,000 for the stock. If he had not regarded the stock as her property, it would seem as if there should have been some entry showing that it belonged to him. The only meaning that can be ascribed to the account as kept is that the stock belongs to her.

The judgment should be affirmed, with costs. All concur.