### SCHNEIDER v. SCHNEIDER.

(Supreme Court, Appellate Division, First Department. December 20, 1907.)

1. GIFT—INTER VIVOS—ELEMENTS.

To constitute a valid gift inter vivos, there must be on the part of the donor an intent to give, delivery of the thing given to or for the donee pursuant to such intent, and an acceptance by the donee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, § 3.]

2. SAME—BURDEN OF PROOF.

Where, in a suit to recover a bank deposit, defendant set up a counter-claim alleging a gift of one-half of the deposit, the burden was on her to establish all the essentials of a completed gift in præsenti by a preponderance of the evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, § 81.]

3. HUSBAND AND WIFE—GIFTS.

Opening a bank account in the joint names of husband and wife, with a direction to "pay to either or the survivor of either," did not of itself establish a gift of one-half of the deposit by the husband to the wife.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Husband and Wife, §§ 253, 254.]

4. SAME—RELINQUISHMENT OF CONTROL.

Where a husband, after marriage, went to a bank in which he had a deposit, and changed the account into the joint names of himself and wife, with directions to pay to either or the survivor of either, and the wife subsequently notified the bank not to permit the husband to withdraw any part of the deposit without her joining, there was no relinquishment of control by the husband such as to establish a gift inter vivos by the husband to the wife of one-half of the deposit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Husband and Wife, § 251.]

Appeal from Special Term.

Action by Gottfried Schneider against the Citizens' Savings Bank to recover a deposit, in which Anna M. Schneider was interpleaded and set up a counter claim as to part of the deposit. From a judgment in

favor of said defendant Anna M. Schneider, plaintiff appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Charles P. Hallock, for appellant.

William J. Barr, of counsel (Henry W. Pollock, on the brief), for respondent.

CLARKE, J. This action was brought to recover a savings bank deposit in the Citizens' Savings Bank. The bank interpleaded the defendant, and holds the money subject to the final determination of the action. The complaint alleges that plaintiff is the owner of the deposit, and demands judgment for the recovery thereof. The answer denies that plaintiff is the owner of the deposit, and sets forth a counterclaim that the defendant became the owner of one-half of said fund by a gift thereof from plaintiff pursuant to an antenuptial agreement, and demands judgment for one-half of said deposit. The reply denies the gift or the antenuptial promise, and pleads the statute of frauds as a bar thereof.

Plaintiff is a machinist. The defendant is his second wife, whom he married in November, 1905. Prior to said marriage, and during the life of his first wife, he had on deposit in the Citizens' Savings Bank about $2,800 and in the German Savings Bank about $2,900. These sums represented the savings of 20 years. During the lifetime of his first wife, who died April 13, 1904, these accounts had stood in the names of the plaintiff and his first wife, as joint accounts, and at her decease came to the plaintiff as survivor, and it is conceded that thereafter, and up to the time of the transaction hereafter to be considered, the account here under consideration had been deposited by and belonged exclusively to the plaintiff. On January 11, 1906, about two months after the marriage of the parties, plaintiff and defendant went to the bank and had his account, which then stood in his own name and that of his former wife, transferred to a new book account, which new account was opened in the name of "Gottfried or Anna M. Schneider pay to either or the survivor of either."

The plaintiff testified: That, before going to the bank, "I told her we were going down to the bank, and I am putting her name in the bank book, so that in case I am sick or dead, or anything happen to me, that she can draw the money without any trouble." That, in the presence of his wife, he said to the cashier: "'I want to have my wife's name on this. * * * I want her name in the book, so that in any case anything happens to me, or sickness or accident, or if I die, then she could draw the money without any trouble.' That was all the talk we had in the bank." The bank book was then taken to their home and put in a locked tin box belonging to the plaintiff, which had theretofore been used, and continued to be used, as a depository for this and other bank books, plaintiff's business papers, the will of his first wife, and the like things. The key of said box was on the dresser in their apartment until the plaintiff took personal possession of it, and put it in his pocket a few days prior to July 20, 1906. On said day the

defendant, for some reason not disclosed in the record, left him. They have not since said date lived together. On the 19th of July, 1906, she caused the following notice to be served upon the bank:

"I beg to notify you that account in your bank, represented by bank book No. 291,341, in which there is a balance of $2,800.86 and interest, which account stands in the name of my husband, Gottfried Schneider and myself, Anna M. Schneider, is not to be drawn on by my husband without my joining in the withdrawal of any sum whatsoever."

Between the 11th of January, 1906, when the transfer of the account was made, and the 20th day of July, when she left the plaintiff, the defendant had not drawn any money from the bank upon this account. Upon the trial counsel for the defendant stated:

"We realize that under the decisions the form of this deposit on the face of the book would indicate survivorship; but we rest upon an oral agreement to execute a gift, and that gift was executed and was represented to be executed, and then that the transfer was made in the bank, but we limit our demand to half because that was all that was promised; that the plaintiff made a gift of one-half of his interest in these moneys to the defendant on that day, though he adopted a form which would warrant her in taking the whole of this if she had drawn them out at the same time. It is our contention that pursuant to an earlier promise in the days of their courtship he gave her half of these moneys."

The defendant testified, in substance: That prior to the marriage the plaintiff had told her how much money he had and he had said to her:

"You know this is going to be half and half; half to you and half to me. This belongs to you, half of this money."

That at the bank, after the new book was handed out by the officer of the bank, the plaintiff said:

"Now I fixed it up. Half of that belongs to you. This belongs to you just as much as to me."

Upon cross-examination she was asked whether she promised to marry him just because he spoke to her about this money, and she answered:

"No; I did not promise to marry him because he spoke to me about this money. That was not my reason for promising to marry him. I thought I was getting a good husband. That was my reason. I had some affection for him at that time. I had as much affection for Mr. Schneider as I have for any man in this world. I did not marry him because he spoke to me about the money."

She also testified that, when they went down to the Bank in January, he said:

"Anna, I promised you that when I went in it. I don't want to lose a day's time. We will go down and have that money put in your name. I promised you that before, and you shall have it half and half."

She testified that she knew the account was made out in his name as well as her own; that he could draw all the money at any time, and that she never asked him to put half of the money in her separate name. The plaintiff denied that he had ever told his wife that he would give her any part of the money, or that he had ever said, "Now, half of the money is yours."

The determination of this controversy depends upon the question whether the facts sustain a completed gift in præsenti inter vivos by the plaintiff to the defendant of one-half of his own money represented by this savings bank account. It being conceded that the whole amount in bank was originally the exclusive property of the plaintiff, and the defendant having alleged by way of counterclaim a gift of one-half thereof to her, the burden was cast upon her of establishing by a preponderance of evidence all the essentials of a completed gift in præsenti. The elements necessary to constitute a valid gift are well understood, and are not the subject of dispute. There must be on the part of the donor an intent to give and a delivery of the thing given to or for the donee, in pursuance of such intent, and on the part of the donee acceptance. Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531. The mere fact of the opening of the account in their joint names "pay to either or the survivor of either" did not in and of itself establish any such gift. Exclusive control was not given to the defendant by the manner of opening this account over one-half thereof, or any part thereof, for the plaintiff thereunder retained the right to draw every dollar of the fund, and use it for his own purposes.

In the Matter of Bolin, 136 N. Y. 177, 32 N. E. 626, Judge Gray said:

"That the moneys were deposited to the account of Julia Cody or daughter Bridget Bolin is not a fact upon which any inference of a transfer or of a gift arises. In the absence of other evidence, these transactions simply evidenced a purpose of the depositor of the money that they should be drawn out by either of the persons named. The only presumption would be that the depositors so arranged for the purposes of convenience."

The case of Slee v. Kings County Savings Institution, 78 App. Div. 534, 79 N. Y. Supp. 630, was an action brought to recover a sum of money deposited with a savings bank and claimed by both the plaintiff and his wife, the money having originally belonged to the plaintiff and deposited in their joint names, "either to draw." In that case the bank book was placed by the husband in a tin box for which he for a time kept the two keys, but finally gave one to his wife in order to enable her to pay bills. He also made out and signed a written statement, in which he promised that he would lay no claim to the money and asserted that it belonged exclusively to her, but he never delivered the statement. She found it, and refused to return it on demand. The court sustained a judgment for the husband, stating that:

"The facts did not justify the claim on the appellant's part of a consummated gift. The deposit for the purpose alleged by the plaintiff, with retention by him of custody of the bank book, did not operate to transfer title to the money, and the subsequent taking of the bank book by the appellant could not accomplish such a transfer."

In Wood v. Zornstoff, 59 App. Div. 538, 69 N. Y. Supp. 241, the court said of a joint account:

"It may have been placed in the names of the two either to insure title in the survivor or as a matter of convenience for this father in his advanced years to enable his daughter to transact the business for him."

This court said in Bowron v. De Selding, 105 App. Div. 500, 94 N. Y. Supp. 292:

"There is no doubt about the law as to what is necessary to constitute a valid gift inter vivos. It is a delivery by the donor of the subject of the gift with intent to at once vest title to the thing given in the donee."

It has been held that whoever alleges a gift must establish it by satisfactory proof. Where the matter is left in doubt, upon the whole case, the case must fail. Matter of Rogers, 10 App. Div. 593, 42 N. Y. Supp. 133; Bray v. O'Rourke, 89 App. Div. 400, 85 N. Y. Supp. 907. "An absolute gift requires a renunciation by the donor and an acquisition by the donee of all interest in and title to the subject of the gift." Curry v. Powers, 70 N. Y. 212, 26 Am. Rep. 577.

It follows that the manner in which the account was opened upon the face thereof furnishes no support for the conclusion of a completed gift inter vivos of one-half of the account. Exclusive control thereof was not lost by the plaintiff, nor acquired by the defendant, and the inference from the account, pointed out by the cases, is entirely borne out by the testimony of the plaintiff that it was so opened to permit the defendant to draw from said account in case of necessity or sickness, and to vest her with the title to the same upon plaintiff's death. Her own claim finds no support in the notice which she served upon the bank, for therein she asserted title to the whole account in contradiction to her present position that she was entitled to only one-half. Nor is it supported by her conduct, because, if her testimony is true that her husband had promised her one-half the amount, there would have been no difficulty when the transfer of the account was made to have had an account opened in her own name for one-half thereof, which would have furnished conclusive proof of a gift thereof to her, if it had been coupled with a delivery of the bank book and exclusive dominion thereof by her.

We do not think that respondent's testimony as to her prenuptial talk with the plaintiff aids her. She distinctly repudiated the suggestion that she entered into the marriage upon the inducement of any such promise. Nor does she now stand upon the enforcement of a contract made in consideration of marriage, for such contract is required to be in writing by the statute of frauds; but she offers the evidence as bearing upon the intent with which the account was opened in support of her claim of a completed gift.

Upon the whole case, we are satisfied that the evidence does not sustain the judgment, and it must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.