George Frankenthaler, S.
This discovery proceeding is brought by the administratrix to recover moneys which were on deposit to decedent’s account in two savings banks during the *571 last year of his life. The respondent’s answer is to the effect that any personalty acquired by her from decedent was transferred to her as a gift.
Decedent was admitted to a hospital on January 13,1954. At that date he had an account with Emigrant Industrial Savings Bank (the Emigrant account) in which there was a balance of $9,989.80, and he also had an account with The Franklin Savings Bank (the Franklin account) in which there was a balance of $8,147.41. The petition herein alleges that while decedent was confined to the hospital he delivered the passbook of the Emigrant account to his brother William and delivered the passbook of the Franklin account to his sister, the petitioner herein, and that such deliveries were made for the purpose of permitting those relatives to withdraw funds from the banks to meet the charges for decedent’s care and maintenance. It is further alleged that decedent’s brother later delivered the passbook of the Emigrant account to his daughter, the respondent herein, who thereafter demanded that petitioner turn over to respondent the passbook of the Franklin account as well as other personalty of the decedent, that, following petitioner’s refusal so to surrender the passbook, petitioner received a written direction from decedent to deliver the passbook to respondent and that petitioner then delivered the passbook to decedent. All these allegations are admitted by respondent. The letter from decedent to petitioner establishes decedent’s purpose in placing both books in respondent’s possession. That letter, dated February 8, 1954, contained the following statement: “ I want the bankbook returned to my niece, Kathleen Daly, immediately so that she can withdraw sufficient funds to pay for my hospital bills.”
For the first two weeks of decedent’s confinement in the hospital no withdrawal was made from the Emigrant account. On January 28,1954, 15 days after decedent’s admission to the hospital, the entire balance in the account was withdrawn and was transferred to a new account in respondent’s name pursuant to directions which appeared on a withdrawal slip over decedent’s signature but not in his handwriting. Between the date of the opening of this new account in respondent’s name and early June $3,848.75 was withdrawn from the account, two deposits of $60.45 each were made and interest of $57.78 was credited to the account, leaving a balance on deposit on June 7 of $6,319.73. Decedent was discharged from the hospital on May 10, 1954 and on June 14, 1954 the balance of $6,319.73 was transferred from the account in respondent’s name to a new account in decedent’s name. Between the latter date and *572 November 1,1954 four deposits of $60.45 each were made in the account. These deposits correspond in amount with deposits made during the period the account was in respondent’s name. There was testimony that decedent’s pension was $60 a month.
Decedent returned to the hospital on November 22, 1954 at which time there was a balance in his account of $6,106.95. A withdrawal of $100 was made on November 26 and on December 2 the account was closed by withdrawal of $6,006.95. The latter withdrawal was made pursuant to a direction on the withdrawal slip that the balance of the account be transferred to a new account in the name of respondent. Decedent’s signature appeared on this paper as the only writing in his hand. When decedent died in the hospital on January 18, 1955 the sum of $6,006.95 was in an account in respondent’s name.
It is beyond dispute that decedent’s original purpose in delivering his passbook to respondent was to facilitate the payment of his bills. There is no credible evidence that he intended to make an inter vivos gift of any moneys in the bank while the account was in his name inasmuch as reliance cannot be placed upon testimony of respondent’s only witness that decedent stated respondent could pay his bills and keep the rest. Neither is there sufficient evidence to establish that the transfer of the account from decedent’s name shortly before his death was a gift of the account to respondent. The establishment of such a gift would rest entirely upon the bare fact that the account was in the name of respondent at the date of the decedent’s death. The transfer from decedent’s name was accomplished by a withdrawal slip bearing decedent’s signature above which appeared the longhand directions for transfer of the account. The proof was that it was respondent’s practice to obtain decedent’s signature on printed withdrawal slips which otherwise were blank and that the amount to be withdrawn would be filled in over the signature. That was the testimony of respondent’s witness and is established by documentary proof. The free use respondent made of these bank forms which decedent signed in blank is demonstrated by the transaction of June 14, 1954. On that date respondent, having previously changed the account to her name, transferred the account back to decedent by the use of a withdrawal slip on which she struck out decedent’s signature and wrote her own beneath it. The printed and written matter above these signatures reads: “ For transfer to my uncle John Daly.” It is obvious from the appearance of the paper and the language of the direction to the bank that in effecting that transfer respondent used one of the withdrawal slips Avhich decedent had signed in blank. The fact that signed *573 forms were available to respondent is demonstrated by other blank forms bearing decedent’s signature which are in evidence.
The first element of a valid gift is an intent to give (Beaver v. Beaver, 117 N. Y. 421; Matter of Van Alstyne, 207 N. Y. 298; Katzman v. Ætna Life Ins. Co., 309 N. Y. 197, 203) but proof of that essential element is wholly lacking here. The evidence that the passbook was delivered to respondent in order to permit her to pay decedent’s bills is not consistent with a gift of the moneys on deposit. If, as testified by respondent’s witness, decedent had told respondent in January or February, 1954 to keep the balance of the account after payment of his burial expenses, his later action was unmistakably indicative of a change of attitude and a revocation of any gift with respondent’s consent. Decedent’s alleged statement was made during his first confinement in the hospital but upon his discharge the account, which respondent had transferred to her name, was transferred back again to decedent and the passbook was returned to him. Certainly a donative intent cannot be found in connection with the second occasion that the account was transferred to respondent’s name in the absence of reliable evidence that decedent was aware of that transfer. In view of the fact that withdrawals from the account were made by withdrawal slips which decedent signed in blank, it is not to be assumed that he had knowledge that one of the withdrawal slips would be used to divest him of the entire account. The burden of establishing a gift was upon respondent (Matter of Schroeder, 113 App. Div. 204, 210, affd. 186 N. Y. 537; Matter of Van Alstyne, supra; Matter of Simonetti, 90 N. Y. S. 2d 306, and cases there cited). Respondent has failed to sustain that burden.
The Franklin passbook, as previously stated, was in the first instance delivered to decedent’s sister and later reached the hands of respondent. It is to be assumed, in accordance with decedent’s letter to his sister, that the book was delivered to respondent to enable her to make withdrawals for decedent’s care in the hospital. That letter was dated February 8, 1954 at which date there was in excess of $8,000 in the account. No withdrawal was made from this account during decedent’s first stay in the hospital. Ten days after his return to the hospital the account was changed from an account in decedent’s name to a joint account in the names of decedent and respondent ‘‘ payable to either or survivor.” Thereafter the following withdrawals were made during decedent’s lifetime: $1,000 on December 10, 1954, $2,000 on December 13, 1954, and $2,000 on December 20, 1954, a total of $5,000. He died at 4:18 a.m. on January 18, 1955. On this date, necessarily after his death, a *574 withdrawal of $2,500 was made from the account, leaving a balance of $739.22, which was withdrawn on January 24.
The Franklin account requires separate consideration only because of the fact that respondent did not change this account to one in her name alone but instead transferred the balance to a joint account in the name of the decedent and herself. The facts in respect to this account parallel those found in Matter of McCarthy (164 Misc. 719, affd. 254 App. Div. 827). In the cited case there was found no conscious acquiescence by the deceased in the form of the deposit and consequently it was held that the irrebutable presumption created by Banking Law (§ 239, subd. 3) had no application to the facts of that case. Neither is that presumption applicable herein. At the time of the purported transfer of decedent’s account to a joint form he was 77 years of age and a hospital patient suffering from cerebral arteriosclerosis, heart disease, anemia, and multiple myeloma. During his active years he had been employed as a laborer. The amount of his pension would indicate that his salary had been meager and that his savings had resulted from the greatest frugality. Testimony to the effect that decedent was unable to read was not contradicted on respondent’s behalf. The fact that decedent’s signature was easily procurable on bank forms and that he wholly relied upon respondent to fill in such forms has been referred to above. A fiduciary relationship existed between the decedent and respondent in which the latter had domination and control of decedent’s bank accounts. Any advantage acquired by respondent as the dominant party in this confidential relationship not only requires the court to carefully scrutinize any transaction involving the funds in the banks but casts upon respondent the burden of establishing that her acquisition of amounts on deposit was free from fraud. (Allen v. La Vaud, 213 N. Y. 322.) This she has not done. Upon all the proof it is found that the change of the account from one in decedent’s name to one in joint form was not consciously made by decedent and that respondent is accountable for the moneys in the account (Matter of Yauch, 270 App. Div. 348, affd. 296 N. Y. 585).
It is held that respondent is accountable to petitioner for the sum of $6,006.95, the balance on deposit in the Emigrant account on December 2, 1954 when respondent transferred that account to her name; that respondent is accountable for her use of sums totaling $3,948.75 withdrawn by her from the account prior to December 2, 1954 and that respondent is accountable for the sum of $8,199.24, the balance on deposit in the Franklin account on December 2, 1954 when the form of the account was changed *575 to a joint account. There was proof that respondent paid hospital bills of decedent totaling $2,804.50, which sum will be credited against her liability to the estate. For the sole purpose of giving respondent an opportunity to offer proof of the expenditure of any additional sums for decedent’s care or maintenance, the matter is restored to the calendar for hearing on the 23rd day of December, 1955 at 11:00 a.m.