John D. Bennett, S.
This is á jirócé8ciing brought By attorneys under Séctitin 231-á bf thé Éürrdgaíé’s Court Act, tb 6x their fde for SérVieéS rendered this éstate, to direct ílié pkjhfterit Of such fed prb fata from certain itéins included in trié tax proceeding as part of the gfoss taxable éStktd, arid fdf payriiéht front them of commissions arid debts df the decedent.
The gross estafe gonsiSts bf rriiSedllanedus items éoiíécte'd aiftouiiting to $401.27, kgainSt which there i§ a funeral bill of $941.38 ánd the counseT fee to tie flidd héféiri. While the pétitióriing attorneys fefdf to k clkim fór éÓtníhlSsidriS By the ádmihistrktdr,- thé tai pfbSeéñiüg prititioh executed by thé admiriistratbf Wáivés sítéh cdhimiSáióriS. íri addition, tile following items aré hot pássiñg through thé a frité ” estate' or through thé ádihlnistr átidri.:

This bduft is Without jurisdictidB to dSal with the liability of the items passing outside the true estate for services rendered by the attorney (Matter, of Roosevelt, 191 Misc. 840);
u Under the present practice, ah award from the estate generally is properly limited id those iristáriéés iti which the services have been rendered to an estate or its representative; Wherfeas, for services reridered to a devisee, legatee, distributed df other interested person, the award must be made payable from trié funds in the hands of trie i representative belonging to the particular person on WhoSe behalf and at whose request the services Weré rendered; (In re Geller’s Estate; 167 Misc. 578. (Surr. Ct. 1938)).

é é $

Where services áre réridefed to a person who is interested in the gross taxable estate but Who has’ no interest in trié true estate passing under the decedent’s will 6'r by intestacy, the S'efvicé’S Would hot ofdiriáfily be df gériéYáí béridhf id the éstate Sd as to Wáfránt an afldwance from the éstate. íri the usual *875 situation such services would be rendered in connection with questions as to the apportionment of estate taxes under Section 124 of the Decedent Estate Law, and there appears to be no valid reason why such services should not be- paid for exclusively by the person in whose behalf they were rendered. Since such person by hypothesis has no interest in the decedent’s true estate, there would be no funds in the hands of the representative belonging to such person from which payment could be directed to be made.” (Bull. No. 6, Assoc, of the Bar of the City of N. Y., Comm, on State Legis. [1958], pp. 447, 448.)
Legislation to change the law to permit the Surrogate to grant an allowance to an attorney for a person interested in the gross taxable estate by an amendment to section 231-a of the Surrogate’s Court Act, was introduced in 1958, 1959 and this year, and has failed in passage to date (N. Y. Legis. Record & Index [1958, 1959, 1960]). It is therefore clear that this court cannot fix the fee of the applicant in connection with the services rendered to property not passing through the true estate, except as to apportionment of estate taxes (Decedent Estate Law, § 124). The court can and will, however, fix his fee for services rendered to this estate. Such fee, together with the balance of the funeral bill, will be debts of the estate for which the true estate has no funds from which to make payment. The question then arises as to whether or not the administrator can recoup from property passing outside the true estate sufficient funds to meet this deficit.
It is clearly established that the jointly owned bank account heretofore listed at “ (a) ” and the jointly held savings bonds listed at “ (b) ” are not liable for the funeral bill, attorneys’ fee, and other estate debts (Matter of Fletcher, N. Y. L. J., Nov. 15, 1957, p. 15, col. 1 [Surrogate’s Ct. Westchester County]).
Regarding the proceeds of the Teachers’ Retirement Fund, listed above at “ (c) ”, and assigned by the decedent in his lifetime to a charity, the petitioner has submitted no authority for charging the proceeds of this fund with estate expenses, and the court has found no basis for making such a charge.
Regarding the three Totten trusts for charities, listed under £< (d) ”, and the Totten trust for an individual listed under £< (e) ”, a different situation is presented. These Totten trusts may be set aside by this court to the extent necessary to pay the funeral, administration and attorney’s fee in an estate (Beakes Dairy Co. v. Berns. 128 App. Div. 137; Matter of Aybar, 203 Misc. 372 ; Matter of Reich, 146 Misc. 616).
We now come to the question of the fee itself. With reference to the administration proceeding, the services rendered *876 consisted of obtaining letters of administration upon a renunciation without bond, with alleged assets of $664.41. Actually the assets collected were $401.27 and consisted of eight small checks and an income tax refund of $226.81. For such services a fee of $100 is adequate and proper, and will be awarded.
In addition, the administrator was under a duty to check as to the validity of the assignment of the Teachers’ Retirement Fund for which services an additional $100 should be allowed. The other item of services was the bringing of the estate tax proceeding. There is much argument in the papers submitted as to whether or not the tax proceeding was necessary. It is not disputed that the Rev. Francis T. Brennan who was joint owner with the decedent of the United States Savings Bonds and a joint bank account, paid a transfer tax of $59.26, an amount in excess of the entire tax due in this estate." Duplicate payment in the amount of $45.85 was made by the administrator allegedly because he could not get the tax receipt held by the attorney for Rev. Brennan. A duplicate of the tax receipt could have been obtained under section 249-z of the Tax Law.
The taxable estate here amounted to less than $5,000, with a total tax of $45.85. The other property included in the return was of a fixed value, and required no particular duties on the part of the attorneys. Furthermore, such valuations were immaterial, since the value of the asset would always be can-celled out by the charitable exemption. The court finds that the services rendered in bringing the transfer tax proceeding under the peculiar circumstances of this estate were reasonably worth $400, payable from the true estate, and that the total fee due the attorneys for the administratrix from the true estate is $600.
The court does not pass upon the amount, if any, due the attorneys from the persons taking property outside of the true estate.
It is interesting to note that the fee of $600 arrived at independently by this court exceeds the estimate made in the tax proceeding. There the attorney estimated his counsel fee at $2,999.47. The amount to be paid by the beneficiaries directly to the attorneys from property passing outside of the estate was listed at $2,668.50 and the amount to be charged-to the estate was estimated at $330.97.
The funeral bill of $941.38 and the attorneys’ fee of $600 make a total of $1,541.38. The assets on hand amount to $401.27, leaving a deficit of $1,140.11. There may he some necessary disbursements including certified copies of the order to carry out this decision and the court has therefore rounded *877 out the deficit to $1,164.20, which is 10% of the Totten trusts chargeable with this deficit as follows:

Each of the above Totten trusts will be required to contribute 10% of its principal amount hereinabove set forth, to the estate to make up the deficit hereinbefore set forth.
Comment should be made at this time on Matter of Robinson (202 Misc. 231) cited by petitioner. Nothing in this decision is contrary to the holding in that case, in which all property in question passed under the will. The problem was whether the value of the specifically devised realty should be considered in determining the amount of counsel fees. The Surrogate did consider it, and fixed a fee payable out of the personalty passing under the will. However, in doing so Surrogate Hazelton remarked: “ I hold that the amount of the gross estate is one of the factors to be considered in fixing the reasonable compensation of an attorney for services rendered during the administration of an estate. The term ‘ gross estate ’ is intended to include all assets as appraised in the' tax proceeding.”
While this court has followed Matter of Robinson (supra) in Matter of Ryan (March 30,1959, Surrogate’s Ct., Nassau Co.) to the extent of considering the amount of the gross estate in fixing the compensation of the attorney payable out of the true estate, it did not hold that the total fee was chargeable to the *878 true estate. In the Ryan case the total fee was about $1,400, and the amount charged against the true estate was $900.
The following quotation from Matter of Roosevelt (191 Misc. 840, 842, supra) is worthy of insertion at this point:
“ For the sake of emphasis, the court reasserts that nothing in this decision is intended in any wise to deal with the claim of the petitioning attorney against the inter vivos trust fund. The .subject matter of his services to such fund and the question whether he was retained to render services in respect of such fund cannot be considered by this court.”
Submit order on five days’ notice, with three additional days if served by mail, fixing and determining the fee of the petitioner’s attorney in the amount of $600; directing the turning over from the Totten trusts of the amounts indicated; directing the payment of the funeral bill by reimbursement to the party paying the same, and directing the payment of the balance of $600 together with the allowance for disbursements to the attorneys for the administrator for their fee in this estate.