Joseph A. Cox, S.
This discovery proceeding was brought to recover the proceeds of a joint savings bank account in the names of the decedent and the respondent and payable to the survivor. The facts are that the account was opened by the decedent on February 1,1952 and the signature of the respondent was placed upon the signature card on or about February 8,1952. It is not clear whether the account was opened in the decedent’s name alone and changed to a joint account a week later or was initially opened as a joint account and delay occurred in the procurement of the respondent’s signature on the bank’s signature card. There are lacking any facts respecting the precise circumstances under which the decedent opened the account, the bank records constituting the only proof in this regard, but it is conceded that the account was controlled by the decedent in his lifetime and all deposits during that period were made by him.
The respondent relies upon the conclusive presumption contained in section 239 of the Banking Law while the petitioning administrator contends that Matter of Creekmore (1 N Y 2d 284) imposes the burden upon the respondent to establish that the decedent knowingly and consciously created the joint account. Subdivision 3 of section 239 of the Banking Law, referring to joint savings bank accounts payable to a survivor and providing that “ The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence * * * of the intention of both depositors to vest title to such deposit and additions thereto in such survivor ” has been construed as creating a conclusive presumption that, upon the death of one depositor, the survivor is entitled to the amount then in the account (Matter of Juedel, 280 N. Y. 37; Moskowitz v. *30 Marrow, 251 N. Y. 380; Marrow v. Moskowitz, 255 N. Y. 219). On many occasions this conclusive presumption has defeated the purposes of decedents since, even when evidence established a lack of intention to vest property in the survivor, it has been held that the conclusive presumption was controlling as to the amount on deposit at the depositor’s death (Matter of Juedel, supra). It has long been recognized that such conclusive presumption goes far beyond the protection from liability to which savings banks may be entitled particularly when banks at times have ignored the interests of their depositors in order to suit their own convenience of operation (cf. Matter of Creekmore, supra, p. 288). Against this background courts have struggled to avoid application of the presumption inasmuch as in the absence of fraud or undue influence the presumption cannot be overcome and, when facts have permitted, courts have avoided the unfortunate result of application of the statute by finding that the deceased depositor never intended to create a joint account (Matter of McCarthy, 164 Misc. 719, affd. 254 App. Div. 827; Matter of Daly, 2 Misc 2d 570). This also was the thinking of the court in Matter of Creekmore (supra).
It is the contention of the petitioner herein that the Creekmore decision has swung the pendulum to the opposite extreme and whereas in the past it has been most difficult to controvert the claim of a surviving joint tenant it now is extremely difficult to establish the claim of a surviving joint tenant. The court does not accept this contention and, in regarding the Creekmore decision as some amelioration of the evils which too often resulted in the past from the application of section 239, the court does not read that decision as imposing the burden of proof upon the claimant. Such a ruling would work extreme hardship inasmuch as it is the legitimate claimant, having had no connection with the opening of the joint account, who would be unable to produce the proof of the negative fact that he neither conspired to obtain the benefit of the account nor induced the opening of the account by deception practiced upon the deceased depositor.
It would seem that the conclusive presumption established by the statute still controls and that the burden of proof is upon the party who seeks the proceeds of the account as against the surviving joint tenant. When such adverse claimant produces proof raising a question as to the deceased depositor’s competency as a result of physical or mental illness or age or when the proof shows that the survivor was in a position of close personal confidence or dominance (cf. Allen v. La Vaud, 213 N. Y. 322) the burden of going forward shifts to the survivor and upon the survivor’s failure to assume that burden his claim to the account *31 fails (Richardson, Evidence [8th ed.], § 96). In the Creekmore decision it was said (pp. 290-291): “ Before the enactment of the predecessor statute to section 239 of the Banking Law, the query had been suggested in some of the decided eases that more might be necessary to create a survivorship interest in a joint account than merely opening the account in that form (cf. Kelly v. Beers, 194 N. Y. 49; Schneider v. Schneider, No. 1, 122 App. Div. 774, 780). The Fenelon [262 N. Y. 57; 262 N. Y. 308] and Moskowitz [251 N. Y. 380] cases put to rest that question, holding that under section 239 the executed intention to make a deposit ‘ in form to be paid to either or the survivor ’ sufficiently evinced a purpose that the proceeds of such an account should belong to the survivor after the death of the other. Ordinarily the signature to joint deposit slips is sufficient evidence of an intention to make a gift to the survivor, but the signature is merely evidence of an intention to make the deposit in this form. Where there is question concerning the competency of the depositor, or the genuineness of her act in creating the deposit, it is not made conclusive by section 239. Neither of these decisions involved the capacity of the depositor, or the closely related question of whether signing the signature cards was the true act and deed of the depositor. They merely dealt with the legal effect consequent upon the voluntary and intentional creation of an account in that form.” This quotation makes it apparent that the test applied by the Court of Appeals was whether the opening of the account was the voluntary and intentional act of the decedent but that such question is not inherent in every claim by a surviving joint tenant and arises only after the presentation of some evidence that the decedent’s act was not voluntary or was not intentional.
In this case there is no indication that the decedent was in any wise incompetent or under any restraint or misapprehension. Insofar as the proof is informative, it indicates that the decedent attended to the opening of the account himself and was unaccompanied at the time. There is no intimation that the account was opened in joint form for the sake of temporary convenience, such as during a hospital confinement and, since decedent died in 1961, this account opened in 1952 does not fall into the category of accounts opened during a last illness. There being no evidence to refute the conclusive presumption arising from the form of the account the conclusion is that the respondent is entitled to the proceeds.
The petitioning administrator asks that, if the proceeds of the bank account are found to be the property of the respondent, the proceeds of the account nevertheless be subjected to the payment *32 of the decedent’s funeral expenses, hospital bill and doctors’ bills. The respondent concedes that if the bank account had been in the form of a Totten Trust the proceeds would be subject to at least some of these charges (Matter of Haggerty, 38 N. Y. S. 2d 433; Matter of Anderson, 206 Misc. 631, 635; Matter of Walsh, 23 Misc 2d 873; Matter of St. John, 163 Misc. 17; Matter of Kenney, 171 Misc. 87; Personal Property Law, § 19) but contends that such estate charges may not be imposed against the proceeds of a joint account (Matter of Walsh, supra; Matter of Fletcher, 200 N. Y. S. 2d 229). In Matter of Haggerty (supra) Surrogate Delehauty held that, in the payment of estate charges, the proceeds of a Totten Trust account would be resorted to prior to resort to the proceeds of a joint bank account. In that decision the Surrogate found the trust account to be sufficient to meet the obligations of the estate but the Surrogate indicated by dictum that the proceeds of a joint account would not be immune were there need to resort to such proceeds. An early decision which has been cited frequently as a basis for permitting estate creditors to reach a Totten Trust fund is Beakes Dairy Co. v. Berns (128 App. Div. 137). In that decision that court said (p. 139): “ One may no more get his money out of the reach of his creditors after' his death by depositing it in such a way, not to belong to his cestui until he dies, than he could do so by means of a will giving it to such cestui. His right to the absolute disposition of it during his lifetime makes it his and therefore subject to his creditors.” The facts in the case at bar are that the account was opened by the decedent and all the deposits in the account until the date of his death were made by him. The account might have been available to the respondent in the decedent’s lifetime provided he had permitted her to have possession of the passbook but any withdrawal by the respondent would be subject to the decedent’s claim to the amount withdrawn (Moskowitz v. Marrow, 251 N. Y. 380, 397, supra; Matter of Porianda, 256 N. Y. 423, 426; Walsh v. Keenan, 293 N. Y. 573, 578; Matter of Otte, 15 A D 2d 819). It would seem that in considering the availability of bank deposits to satisfy creditors’ claims past distinctions between Totten Trust accounts and joint accounts on the basis that the joint tenant acquired a more definitive or tangible interest have been obliterated to some extent by the holding in Matter of Halpern (303 N. Y. 33) that the creation of a Totten Trust account is not an illusory transfer within section 18 of the Decedent Estate Law and is a transfer with legally fixed effects. Certainly an equitable approach to the evaluation of creditors’ rights against the claims of recipients of gratuitous benefits does not point to any differentiation *33 premised upon the form of the hank deposit. Here it was the decedent who selected the form of the account and it was his money which was deposited. To say that a depositor may evade his obligations by selecting one form of bank account rather than another is to permit him to accomplish a result which he could not achieve by will. If this is so, the recipient of such an account acquires property beyond the reach of creditors without consideration and .solely by reason of either the wile of the decedent or, perhaps, by sheer chance resulting from the decedent’s innocent choice of the form of the account. The court is disinclined to sanction such a result and feels that in this area a basis for distinguishing between a Totten Trust account and a joint account consisting entirely of the decedent’s money does not exist.
The administrator alleges that the estate is without funds to pay the charges for decedent’s last illness and funeral expenses. If this is the fact resort may he had to the proceeds of the hank account except for the sum of $109.56 which was deposited after the decedent’s death and is the money of the petitioner. The charges total $1,397.50 but it is the privilege of the respondent to challenge both the validity and the reasonableness of such charges (Matter of Haggerty, supra, p. 435). A further hearing-will be held for such purpose and the attorneys for the parties will he advised as to the date of such hearing. Pending- such hearing an intermediate decree may be submitted, on notice, authorizing the savings bank to pay to th¿ respondent the difference between the charges as claimed by the petitioner and the sum on deposit.